36 N. Y. 297–APPROVED, 83 N. 190.
REVIEWED, 90 Pa. St. 415.

PHINEAS L. ELY, Successor, etc., Respondent, *v.* THE BOARD OF SUPERVISORS OF NIAGARA COUNTY, Appellant.

Under the provisions of the act of April 13, 1855, to provide for compensating parties whose property may be destroyed in consequence of mobs or riots, notice to the public officers will not be required, where the party injured had no information in respect to which to give the proper notice.

Where the property of the party has been thus destroyed, in an action against the board of supervisors of the county to recover for such damage, it is no defense to the action to prove that the houses destroyed were kept by the plaintiff as bawdy houses, and as a rendezvous of thieves, robbers, murderers, etc.

To keep a bawdy house and a rendezvous for thieves, robbers and murderers, does not constitute such an act of carelessness or negligence as will prevent the guilty party from recovering under the provisions of such act.

A house kept as a house of ill fame, etc., is a public and common nuisance ; but the destruction of the building and its furniture is not necessary to its abatement.

APPEAL from a judgment of the Supreme Court, rendered at General Term in the eighth district, affirming a judgment entered on a verdict in favor of Maria Moody, the plaintiff's assignor, for $4,500, rendered on trial at circuit in Niagara county, Hon. NOAH DAVIS presiding.

The action was brought by the said Maria Moody under the " act to provide for compensating parties whose property may be destroyed in consequence of mobs or riots," passed April 13th, 1855, to recover damages for the destruction of two houses and their furniture belonging to her, and situate in the village of Niagara City, in Niagara county. The property was destroyed by fire on the 15th September, 1865, in consequence of a mob or riot. The owner never at any time notified the sheriff of Niagara county of any threat or attempt to destroy the property, or of any facts brought to her knowledge. It was shown that she was not apprised of any such threat or attempt until the destruction had considerably progressed, and that when so apprised she was unlawfully taken into custody by the police or others acting in concert with the rioters, and confined in the lock-up of the village, where she was detained until after the destruction was complete.

*The decis in below is reported as Moody v. Supervisors &c 46 Barb. 659.*

The houses, with the furniture, were kept and maintained by the owner at the time of their destruction, as bawdy houses, and had been so kept and maintained for a long time previous.

The defendants, on the trial, offered to show that the houses and furniture, at the time of their destruction, were kept by the owner not only as bawdy houses, but also as a resort and rendezvous of thieves, robbers and murderers.

This evidence was rejected, and the defendants excepted.

There was no evidence tending to show that the destruction of the property was occasioned or in any manner aided, sanctioned or permitted by the carelessness or negligence of Maria Moody, other than that tending to show the purposes for which the houses were kept, and their character.

Maria Moody assigned the verdict to the present plaintiff before the case was heard at the General Term, and he was substituted as plaintiff by an order of the court.

*Lamont & Ellsworth*, for the appellant.

*A. P. Lanning*, for the respondent.

SCRUGHAM, J.    The only questions presented by the printed argument of the appellant are as to the necessity of notice to the sheriff, and as to the carelessness or negligence of the plaintiff.

It is not pretended that it was possible for the plaintiff to give the notice required by the provisions of the act under which her action is brought before the destruction of her property was complete; but it is insisted that as she did not afterward give the notice, her action cannot be maintained.

The notice which the act requires is not of the injury or destruction of the property, but of the facts brought to the knowledge of the owner, showing any threat or attempt to destroy it, and the object of requiring it is fully disclosed by the only duty expressed in the act which its receipt imposes upon the officer to whom it is given; which is to take all legal means to protect the property attacked or threatened,

a duty impossible of performance after its total destruction. One of its good effects, if it should be received by the sheriff in time, would be to enable him to arrest the rioters while the riot was progressing, but this he would not do by virtue of any power conferred by the notice, but under his general authority as a peace officer.

No benefit in this respect, however, could be derived from the notice after the rioters had dispersed, for the sheriff could not then arrest them without a warrant, and the duty of procuring such is no greater upon him than upon the person who gives the notice, or any other citizen having knowledge of the facts.

It was proved, on the trial, that the houses which were destroyed were kept and maintained by the plaintiff as bawdy houses at the time of their destruction, and had been so kept for a long time previous thereto, and the defendant also offered to prove that they were also kept as a resort and rendezvous of thieves, robbers and murderers; that such and other disorderly and wicked persons were notoriously accustomed to be received, entertained and harbored in them by the plaintiff, to the great fear, danger and apprehension of all the people of the town of Niagara, and that during the night preceding their destruction, divers of the criminal and wicked persons whom the plaintiff was accustomed to receive and harbor in them, murdered a resident and citizen of the town in the highway near the houses, while he was in the exercise of his duty as a policeman, and that the fact of such murder being publicly made known on the next morning, and the body being found on the highway close by the plaintiff's house, "great exasperation, excitement and indignation were caused and excited among all the people in said vicinity and town."

The defendants claim that the exclusion of this testimony by the court was error, as it was calculated to establish such carelessness or negligence in the plaintiff as would bar her right to recover against the county.

The third section of the act provides that no person shall be entitled to recover against a city or county for the dam-

ages sustained by reason of his property being destroyed or injured in consequence of a mob or riot, "if such destruction or injury was occasioned, or in any manner aided, sanctioned or permitted by the carelessness or negligence of such person." To keep a bawdy house and place of rendezvous for thieves and murderers is criminal wickedness; but, considered only in reference to the safety of the house and furniture used, it cannot be regarded as carelessness or negligence; for it is not an act which, of itself, would naturally cause or contribute to produce the injury or destruction of the property; but it is urged that such a use of a house occasions riot and "stirs up the virtuous indignation of contiguous society who injure the property on this account," and, therefore, that such use of the property is carelessness or negligence, which occasions, or in some manner aids, its destruction or injury.

A house kept as a house of ill fame and as a resort for thieves and other disreputable persons, is a public and common nuisance; but the destruction of the building and its furniture is not necessary to its abatement, and is unlawful; so, too, are riots and mobs.

The keeping of such a house may justly excite the virtuous indignation of persons residing in the neighborhood, but it in no manner authorizes or justifies their unlawful acts; nor can it be said that, in well-governed communities, it occasions riots or leads to the destruction or injury of the property through the indignation of the public, for this, in such communities, will be kept within lawful bounds by the public authorities, whose duty it is to prevent all riots, and to protect all property from injury by them. The property of the plaintiff was not put beyond the pale of the law's protection by her detestable and criminal conduct—she still had the right to expect and to rely implicitly upon the zeal and ability of the proper public officers to defend her house and furniture against the unlawful effects of any public indignation her evil practices might provoke.

She was not to assume that the officers would not or could not perform their duty effectually, and, therefore, having no reason to fear the injury or destruction of her property by a

riot or mob, she was not careless or negligent in not antici-
pating that such would be the result of the evil use to which
she applied the property.

But the carelessness and negligence referred to in the act,
are such as actually occasion or proximately contribute to the
injury or destruction of the property, as the opening of a
window and its fire-proof shutters in a house adjoining one
in conflagration at the time, through which burning embers
enter and set fire to the house. In such a case no action
could be maintained under this act, although the adjoining
house was fired by a mob, for the negligent act of opening
the windows and shutters would be considered as occasioning
or aiding the destruction of the property. But the conduct
of the plaintiff was not such a cause as would naturally pro-
duce or aid in producing the destruction of her property;
and its influence in that direction is too remote and uncertain
to prevent its being considered such carelessness or negli-
gence as would bar her recovery.

All that her conduct can strictly be claimed to have pro-
duced was local public indignation; and this, lawfully mani-
fested, would not have occasioned or in any manner aided
in the destruction of her property.

Being misdirected, but not through her agency, it pro-
duced the riot, and the violent and unlawful acts of those
engaged in it occasioned the injury.

The construction for which the defendants contend requires
the substitution of the words "mob or riot" for the words
"destruction or injury" in the third section of the act.

That this substitution was not made by the legislature is a
sufficient indication that it was not intended the act should
be so construed.

The evidence offered was properly rejected, and as that
which was received did not establish carelessness or negli-
gence within the meaning of the act, the judgment should
be affirmed.

All the judges concurring,

Judgment affirmed.