# Wytheville.

## BRISTOL DOOR & LUMBER CO. v. CITY OF BRISTOL.

### JUNE 29, 1899.

' Absent, Riely, J.

1. MUNICIPAL CORPORATIONS—*Injunctions—Irreparable Injury.*—Courts of equity have jurisdiction to restrain the proceedings of municipal corporations which encroach upon private rights, and are productive of irreparable injury.

2. MUNICIPAL CORPORATIONS—*Police Powers—Nuisance.*—In order to secure and promote the public health, safety, and convenience, municipal corporations are endowed with power to prevent and abate nuisances. This power, and its summary exercise, may be constitutionally conferred on municipal corporations, and they may be authorized to act against that which comes within the legal definition of a nuisance, but such power conferred in general terms, cannot be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such.

3. MUNICIPAL CORPORATIONS—*Nuisance—Destruction of Buildings.*— When a building is a nuisance only because of the uses to which it is devoted, the building itself cannot be pulled down to stop the nuisance, but only the wrongful use can be stopped. The occupation of a building by disorderly and lewd persons, its filthy and unsightly condition, and the consequent injury to adjacent property, do not justify its destruction as a nuisance.

Appeal from a decree of the Corporation Court of the city of Bristol, pronounced April 5, 1897, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Rhea & Peters,* for the appellant.

*Bailey, Price & Byars, J. S. Ashworth, J. W. Read,* and *W. S. Hamilton,* for the appellees.

HARRISON, J., delivered the opinion of the court.

At a regular meeting of the council of the city of Bristol, held February 4, 1896, a resolution was adopted declaring a certain building belonging to appellant, known as " Buffum's Stalls," to be a nuisance, and the mayor of the city directed to proceed to have the same abated as such.

On the 19th day of March, 1896, the mayor of the city informed the appellant in writing of the action of the council, and notified it that, unless the building in question was removed in thirty days from March 20, 1896, he would proceed to enforce the ordinance of the city, prescribing a fine of not less than one dollar, nor more than twenty dollars, for each day the building thereafter remained, and that, in addition thereto, he would have the same removed at the expense of appellant.

On the 20th day of April, 1896, appellant applied to and obtained from the judge of the Corporation Court of the city of Bristol an injunction restraining the execution of the resolution of the city council, which injunction was dissolved by the decree appealed from on the 5th day of April, 1897, and the bill dismissed.

The appellant is a corporation, incorporated under the laws of Virginia, and engaged in the manufacture of doors, window sash, mouldings, and other house furnishings. About two years before the institution of these proceedings, it purchased, for the purpose of conducting its business, a plant on Williams street, in the city of Bristol. This purchase included a large two-story

framed building, situated near the factory, consisting of eight tenements, all under one roof, and containing in all some forty rooms, used by the owners of the factory for occupation by its employees.

The bill charges that appellant knew nothing of the resolution of the council, and that it had no notice, of any character, that the city authorities had under consideration the matter of declaring its property a nuisance, and that there was no legal testimony before the council that its property was a nuisance. The bill further charges that said property is not a nuisance; that it in no way endangers the life or health of the citizens of the city; that its occupants are not disorderly or lewd people; that, in no respect and for no reason, could the same be accounted a public nuisance, and that it is valuable not only as homes for its employees, but for other purposes, such as storage rooms for lumber, etc.

The appellee demurred to this bill, and, in its answer, vouched the following section of its charter, defining the powers of the city council, as the authority for its action: " To require and compel the abatement of all nuisances within said city at the expense of the person or persons causing the same, or the owner or owners of the ground whereon the same shall be; to prevent and regulate slaughter-houses, soap and candle factories in said city; for the exercise of any dangerous, offensive or unhealthy business, trade or employment therein; and to regulate the transportation of coal and other articles through the streets of said city." The answer then alleges, as ground for the resolution complained of, "that appellant had allowed said building to become a nuisance by keeping disorderly and lewd persons therein, by permitting the same to become filthy and unsightly objects; being a constant source of annoyance to all parties residing in their vicinity, and greatly depreciating the value of surrounding property."

The bill states a clear case for the intervention of a court of equity, and the demurrer thereto was properly overruled.

The facts alleged, if true, show that appellant was about to suffer, at the hands of appellee, an irreparable injury in the destruction of its property. In such cases the law is well settled that courts of equity have jurisdiction to restrain the proceedings of municipal corporations, where those proceedings encroach upon private rights, and are productive of irreparable injury. High on Inj. (ed. 1874), subject "Municipal Corporations," pp. 463 to 471; *Yates* v. *City of Milwaukee*, 10 Wallace, 497. In the case cited, the bill was filed by the appellant, Yates, to restrain the city of Milwaukee from interfering with his wharf, that had been condemned by the city as an obstruction to navigation and a nuisance, and ordered to be abated. The bill was dismissed by the lower court, and, upon appeal, the Supreme Court reversed the decision, and entered a decree enjoining the city from interfering with the wharf.

The exercise of the police power is indispensable to the proper government of all cities, and the safety and protection of their citizens. The limit of that power it would be difficult to define, if, indeed, it could be fixed. There is no doubt, however, that it extends to the protection of the lives, health, morals, and safety of all persons in the community. It is to secure and promote the public health, safety, and convenience that municipal corporations are so generally and so liberally endowed with power to prevent and abate nuisances. This authority, and its summary exercise, may be constitutionally conferred on the incorporated place, and it authorizes its council to act against that which comes within the legal notion of a nuisance; but such power conferred in general terms cannot be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such. 1 Dillon's Munic. Corp. (4th ed.), sec. 374; *Yates* v. *City of Milwaukee*, *supra.* In the case last cited, Mr. Justice Miller, speaking upon this subject for the Supreme Court, says: " But the mere declaration by the city council of Milwaukee that a certain structure

was an encroachment or obstruction, did not make it so, nor could such declaration make it a nuisance unless it in fact had that character. It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general law, either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city at the uncontrolled will of the temporary local authorities." Numerous authorities of the highest value might be cited to sustain the law as laid down by this learned judge, but it is deemed unnecessary.

The question whether or not appellant's building is such a nuisance as called for its destruction, is one of the facts to be determined by the evidence. As already seen, the case stated by appellee in its answer, which is all it attempts to prove, is that disorderly and lewd persons are allowed to occupy the buildings; that they are permitted to become filthy and unsightly objects, being a constant source of annoyance to all parties residing in their vicinity, and that the value of the surrounding property is thereby depreciated.

Had these charges been established, the destruction of appellant's property would not have been justified. When a building is a nuisance only because of the uses to which it is devoted, the building itself cannot be pulled down to stop the nuisance, but only the wrongful use can be stopped. 2 Wood on Nuisances, sec. 738. Indeed, it would require a great stretch of judicial power for a court of equity to sanction the abatement of a building as a nuisance, when the building itself does not, but only its use, constitutes the nuisance. The law will only permit the abatement of so much of a nuisance as is necessary to prevent the injury. It is only necessary to be rid of the persons who use the buildings for an unlawful or improper purpose, and

the law affords ample remedies, by indictment and otherwise, to accomplish this purpose.

In 1 Dillon on Municipal Corporations, sec. 376, it is said: " Power to suppress bawdy houses gives the corporation authority, by implication, to adopt by ordinance the proper means to accomplish the end. But power to the common council of a city to make all such by-laws as it may deem expedient for effectually preventing and suppressing houses of ill fame, does not authorize the council to decide that a given house is kept for that purpose, nor, if kept for that purpose, does it authorize the council to order it to be demolished, nor if thus demolished, will it justify the officers of the city who did it, in execution of the ordinance and resolution of the council." In a case involving this question, the Court of Appeals of New York said: " A house kept as a house of ill fame, and as a resort for thieves and other disreputable persons, is a public and common nuisance, but the destruction of the building and its furniture is not necessary to its abatement, and is unlawful." *Ely* v. *Supervisors of Niagara County,* 36 N. Y. 297.

So, when a building is not kept as clean as it should be in the interest of public health, the remedy for this wrongful use is ample, and a destruction of the building for that reason would be unlawful.

Nor can it justify the destruction of a building that its use diminishes the value of surrounding property. It is not enough that it renders other property less saleable, or that it prevents one from letting his premises for as large a rent as he might otherwise do, or to as responsible or respectable tenants. Nor does the fact that a building is unsightly justify its destruction.

There are many unpleasant, and, indeed, offensive things, that must be borne with by the owners and occupants of estates, because, although offensive to the eye or cultivated taste, they do not trench upon any recognized legal right; and this is the case, even though the thing complained of materially lessens

the value of surrounding property.  The home of the poor is
often unsightly to the eye of those who are able to live in more
elegant establishments, but to the humble occupant, who can
afford nothing better, it is home.  1 Wood on Nuisances, sec. 3.

We have thus far dealt with the case of the appellee, as stated
in its answer.  The proof fails to sustain the case stated.  The
evidence in support of the answer is chiefly directed to a period
of time prior to the ownership of the property in question by
appellant.  The weight of the evidence to be considered estab-
lishes that, since appellant became the owner of the building in
question, it has been occupied by three employees at the factory
of the appellant, together with their families.  These employees
are shown to be industrious and faithful men, constantly at work,
and earning good wages.  The evidence further shows that since
appellant became the owner of the building it has not been kept
in an unclean condition, nor has it, during that time, been occu-
pied, or resorted to, by lewd or disorderly persons.  The property
is separated from all surrounding houses by streets and vacant
lots.  Without further commenting upon the evidence, it is
sufficient to say that it satisfactorily shows that the building in
question has been, in no sense, a nuisance since the ownership
of the appellant.

For these reasons, the decree appealed from must be reversed,
and this court will enter a decree perpetually enjoining the de-
fendants in the court below from executing the resolution in
question, of the council of the city of Bristol, directing the de-
struction of the building of appellant known as "Buffum's
Stalls."

*Reversed.*