# Richmond.

CITY OF ROANOKE AND ANOTHER V. BOLLING.

. January 29, 1903.

Absent, Buchanan, J.

1. MUNICIPAL CORPORATIONS—*Fire Limits—Repairs to Wooden Buildings—Powers of City Engineer—Case in Judgment.*—A municipal corporation may establish fire limits, and make reasonable ordinances regulating the erection or repair of wooden buildings within such limits, but, in the absence of legislation to that effect, it cannot vest in its engineer the sole power to determine the amount and extent of damages to a building within such limits, nor authorize him to refuse to allow such building to be repaired. In the case in judgment the building was lawfully erected within the city of Roanoke. It was not so far destroyed as to render it unreasonable to permit it to be repaired, and the city charter does not confer upon the City Council power to invest its engineer with an arbitrary power to refuse to permit such repairs.

2. MUNICIPAL CORPORATIONS—*Nuisances—Arbitrary Declaration—Delegation of Power.*—A municipal corporation, having power to abate nuisances, cannot arbitrarily declare a building which has been lawfully erected to be a nuisance. It must first be lawfully ascertained to be such. Nor can it, under a general power to abate nuisances, designate any person to determine finally whether a building is a nuisance or not.

3. MUNICIPAL CORPORATIONS—*Irreparable Injuries—Injunction.*—Courts of equity have jurisdiction to restrain the proceedings of municipal corporations where the proceedings encroach upon private rights and are productive of irreparable injury.

Appeal from a decree pronounced by the Circuit Court of the city of Roanoke, in a suit in chancery, wherein the appellee was the complainant, and the appellants were the defendants.

*Affirmed.*

The opinion states the case.

*C. B. Moomaw* and *A. P. Staples*, for the appellants.

*Watts, Robertson & Robertson*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

The appellee, Bartlett Bolling, is the owner in fee of certain land in the city of Roanoke, on the southwest corner of Church avenue and Henry street, and running back along First street southwest to Luck avenue, and upon this land he built in 1888 a double wooden building, which was thereafter, and until the institution of this suit, rented and used for livery stable purposes.    On the 2d day of December, 1901, this building was injured by fire, and appellee thereupon applied, in accordance with the ordinances of the city of Roanoke, to its engineer, J. H. Wingate, for a permit to repair it, which permit was not only refused, but appellee was notified in writing, December 4, 1901, by the mayor of the city, that he had, upon information derived from the city engineer, condemned the building as a menace to public safety, and required that it be removed within thirty days.    Whereupon appellee filed his bill in the Circuit Court of Roanoke city praying an injunction against the city, and Jas. H. Wingate, city engineer, restraining them from condemning or otherwise interfering with the enjoyment and possession of his said property, and further praying a mandatory injunction requiring the city to issue a permit allowing him to repair his said building.    Upon the hearing of the cause on the pleadings and proofs for both complainant and defendants, the Circuit Court decreed the relief prayed, and from this decree the defendants appealed.

It appears that the building in question was lawfully erected, and was not within the fire limits prescribed by the ordinances of the city of Roanoke at the time of its erection; but was sub-

sequently brought within such limits by an ordinance adopted either in 1895 or 1896; that the building was of the same character of construction, and in as good condition previous to the occurrence of the fire, which damaged it, as all other buildings used for similar purposes, of which there are several within a radius of a few hundred feet, and also within the fire limits of the city; that, from time to time, as the use of the building, from its nature, made such repairs necessary, repairs sufficient to keep it in reasonably and substantially sound and safe condition, were placed upon it; and that as late as April, 1899, about eighteen months before the fire, extensive repairs were placed on the property, and the building was inspected and accepted by James H. Wingate, city engineer, as being in sound and good condition.

No serious effort was made by appellants to show that as much as one-half of this building, "exclusive of its foundation," was destroyed by fire, but to prove that the cost of repairs desired to be made would exceed the value of the portion of the building left standing, some of the witnesses for this purpose do give it as their opinion that such would be the case. On the other hand, the preponderance of proof is that more than one-half of the building, "exclusive of its foundation," was left after the fire occurred, and that it was a safe and sound building previous to the fire; and this conclusion was also reached by the learned judge below, who was invited by counsel representing all parties interested to personally inspect the premises, as stated in his written opinion made a part of the decree complained of.

The charter of the city of Roanoke, as is usual in charters of like municipalities, confers upon the Council of the city the right to prescribe limits within which any wooden building may be erected; the right to control and regulate the erection of buildings within the city; the right to abate, and to cause to be abated, nuisances of every description within the city; and to

enact ordinances for the good and safety of the city and its citizens.

Among the ordinances of the city passed, as it is claimed, pursuant to the authority conferred by the city's charter, and relied on by appellants as warranting the action taken by the mayor of the city, refusing appellee a permit to repair his building, and requiring him to remove the same, is the following:

"Sec. 320. Any wooden building constructed in the fire limits, which may hereafter be damaged, may be repaired, provided the building was a good sound one previous to said damage, and provided that it is not more than half destroyed, exclusive of the foundation. The city engineer shall determine the amount and extent of such damage."

It is contended that, under the last clause of the above ordinance, and under the city's common law police powers, where property has been damaged, and, in the judgment of the city engineer, the building was not a good and sound one previous to the damage, and was more than half destroyed, the city has the power to refuse a permit to repair the property, to condemn the buildings arbitrarily, and to require their removal. A number of authorities are cited in support of this proposition, but they have no application whatever here, as they all, or nearly all, refer to cases in which the condemned or removed property had been erected contrary to law, or was of imminent danger to surrounding property.

It is not contended on behalf of appellee that a city is not authorized by its charter and may not, in the exercise of its police power, prescribe fire limits, and prevent the erection of wooden buildings therein, where such regulations are reasonable, and are consistent with the general and special legislation applicable to the municipality; nor is it denied, if such buildings are located within the fire limits so established, and after the establishment of such limits, that the municipality can cause the

same to be removed by proper proceedings.    But we do not find
in the charter of the city of Roanoke, or elsewhere, authority
for the Council of the city to vest in the city engineer or any
other person the sole power to determine the amount and extent
of damages to a building within the fire limits, and to authorize
him to refuse to allow the building in question to be repaired.

"While a corporation may prohibit the erection of frame
buildings, they cannot prohibit the repairing of such as are al-
ready erected."    15 Amer. & Eng. Enc. L. (1st ed.), 1171, and
authorities cited.

To arbitrarily refuse appellee a permit to repair his building,
lawfully erected and not so far destroyed as to make it reason-
able to refuse such permit, destroys the value of his property,
which is useless without such repairs, and is without authority
in the city's charter.

Nor do we find in the charter of the city authority for con-
ferring upon any officer of the city power to arbitrarily declare
what was left of appellee's building to be a nuisance, and to re-
quire its removal.    The charter confers upon the Council the
right to abate a nuisance, and to prescribe penalties for main-
taining the same.    The Council also has the right to appoint
one or more persons to inspect and report whether a nuisance
should be condemned and abated, so that proper action can be
taken by the Council; but it clearly has not the right to desig-
nate any person to determine finally whether a building is a nui-
sance or not, and section 33 of the charter of the city, relating
to nuisances, confers no such power upon the Council.

"The municipal authorities cannot arbitrarily declare a thing
a nuisance, or destroy valuable property which was lawfully
erected or created, when such thing or property is not a nuisance
*per se*, until this fact has been lawfully ascertained.    Further,
where the necessary power has been expressly conferred by the
Legislature, it is inoperative and void, unless the thing is in fact

a nuisance." 15 Amer. & Eng. Enc. L. 1179, and authorities cited.

"The power to abate nuisances does not warrant the destruction of valuable property which was lawfully erected; or anything which was erected by lawful authority. It would be indeed a dangerous power to repose in municipal corporations to permit them to declare by ordinance or otherwise anything a nuisance which the caprice or interest of those having control of its government might see fit to outlaw, without being responsible for all consequences; and even if such power is expressly given by the Legislature, it is utterly inoperative and void unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and is in defiance of the law." Wood on Nuisances, 823. See also *Yates* v. *Milwaukee*, 77 U. S. 497, 19 L. Ed. 984; *Mt. Vernon Bk.* v. *Sarlls* (Ind. Sup.), 28 N. E. 434, 28 Am. St. 185, 13 L. R. A. 481; Tiedeman on Munic. Corps. sec. 130.

Upon the question whether or not this is a case for equitable interference by injunction, we need only to cite the decision of this court in *Bristol D. & L. Co.* v. *City of Bristol*, 97 Va. 304, 33 S. E. 588, 75 Am. St. Rep. 783, where it is said:

"The law is well settled that courts of equity have jurisdiction to restrain the proceedings of municipal corporations, where those proceedings encroach upon private rights, and are productive of irreparable injury."

We are of opinion that the decree appealed from here is right, and it is therefore affirmed.

*Affirmed.*