## Staunton

W. L. THOMPSON v. D. C. SMITH, CHIEF OF POLICE.

September 12, 1930.

Absent, Campbell and Holt, JJ.

*A. S. Hester,* for the appellant.

*T. G. Hobbs,* for the appellee.

Epes, J., delivered the opinion of the court.

W. L. Thompson appeals from a decree entered on March 15, 1929, by the Corporation Court of the city of Lynch-

burg dismissing upon demurrer a bill in chancery filed by him against D. C. Smith, chief of police of said city, in which he prays that said chief of police be enjoined from interfering with his operation of his private passenger automobile on the streets of Lynchburg, and that the chief of police be compelled to restore to him his permit to operate a private automobile on said streets, which permit it is alleged the chief of police has revoked, acting under the italicized provision of sub-section "c" of section 134 of the general ordinances of the city of Lynchburg below quoted.

Section 134 of the general ordinances of the city of Lynchburg, as amended by an ordinance adopted September 22, 1925, reads as follows:

"(a)  It shall be unlawful for any person (other than transients remaining in the the city not exceeding seven days) to drive or operate any motor vehicle upon the streets of the city until a permit so to do has been issued to such person by the chief of police.

"(b)  Any person desiring to secure such permit shall apply in person therefor to the chief of police, who shall cause such applicant to be carefully examined as to his or her ability to safely and properly operate motor vehicles upon the streets of the city, and as to his or her knowledge of the traffic laws of the State of Virginia and city of Lynchburg.  And no permit shall be issued to such person unless such examination shall disclose that he or she possesses such ability and knowledge as, *in the judgment of the chief of police*, qualifies such person to receive such permit. And in no event shall any such permit be issued to any person under the age of sixteen years.  *  *  *

"(c)  The person to whom such permit shall be issued, shall pay a fee of $1.00 therefor; and such permit shall always be carried by such person while operating any motor vehicle upon the streets of the city, and shall be presented by such person to any police officer upon request.  Such

permit shall be perpetual unless revoked as provided in this chapter. *Conviction of a felony*, or of *violating the prohibition law*, shall revoke such permit for a period of twelve months and conviction of the violations of the traffic laws three times within one year shall revoke such permit for such time as the judge of the municipal court may direct, not to exceed one year. *The chief of police is authorized and directed to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city*, with the right to the holder of such permit to apply to the judge of the municipal court to have his permit reinstated."

Prior to said amendment of September 28, 1925, section 134 read just as it now does, except that it did not contain the last two sentences of sub-section "c," which were added by said amendment.

After setting forth the said ordinance, the amendment thereof, and that Thompson had been issued the permit revoked by the chief of police prior to September 28, 1925, the bill alleges the following facts:

When said permit was issued to him, Thompson then possessed, and has always since possessed, all the requirements, ability and knowledge required by said ordinance as a prerequisite to the issuance of a permit to drive an automobile on the streets of Lynchburg. Thompson is the owner of the automobile which he was driving at the time his permit was revoked, and had been driving an automobile on the streets of Lynchburg for more than ten years without any complaint having been made as to his ability to drive an automobile safely and properly. He has not become in any way incapable of driving an automobile since his permit was granted. He has not been convicted of any offense for the conviction of which said ordinance authorizes the revocation of his permit.

The circumstances of the revocation of Thompson's permit were these.

Prior to the revocation of his permit he had been twice convicted before the judge of the municipal court of the city of Lynchburg of speeding on the city streets, and on each conviction was fined $50. He did not appear to make any defense on either occasion. On the second trial the judge of the municipal court at first ordered Thompson's permit revoked; but when it was brought to his attention that the ordinance authorized him to revoke a permit for a conviction of violating the traffic laws only when the defendant has been convicted three times within one year, he so modified his judgment as to omit the revocation of the permit.

Thompson continued to drive his car in the city of Lynchburg for some time after said second conviction without any interference from the police; but in November, 1928, he was summoned to appear before the judge of the municipal court on the charge of driving a car without a permit. When the case was heard Thompson claimed to have a permit; and testified he had not received any notice from anyone that his permit had been revoked. The chief of police testified that he had written Thompson that his permit had been revoked, but that he did not know whether Thompson had gotten the notice or not.

The judge of the municipal court held that Thompson could not be convicted on this testimony of driving without a license or permit; but instructed.the chief of police to notify him there and then that his permit was revoked. The chief of police then and there in open court notified Thompson that his permit was revoked; but no reason was given at the time for the revocation of his permit by either the judge of the municipal court or by the chief of police.

The bill charges that the chief of police in revoking this permit acted under the italicized provision of sub-section "c" of section 134 of the general ordinances, as amended, hereinbefore quoted; and that the chief of police was

without authority to revoke said permit for the following reasons:

(1) Thompson had acquired a vested right in his permit prior to the time the ordinance was amended so as to provide for the revocation of permits; and if this amendment is intended to apply to permits granted before it was adopted it is void, because it violates section 58 of the Constitution of Virginia which prohibits the passage of *ex post facto* laws or laws impairing the obligation of contracts.

(2) The provision authorizing the chief of police "to revoke the permit of any driver who, *in his opinion*, becomes unfit to drive an automobile on the streets of the city" is void, because it is a delegation of legislative power to an administrative officer, in that it authorizes the chief of police to revoke a permit whenever, *in his opinion*, the holder thereof has done or omitted to do something, the doing or omission of which the chief of police thinks renders the holder unfit to drive an automobile on the streets of the city, without prescribing any uniform rule, applicable to all persons alike, as to what constitutes unfitness to drive an automobile on the streets of the city, or laying down any rule for the guidance and control of the chief of police in determining what constitutes unfitness to drive an automobile on the streets of the city.

The bill further alleges that if Thompson be deprived of the right to drive his automobile on the streets of the city "he will sustain irreparable injury in his pursuance of happiness and in acquiring and the use of his property."

The sole ground of demurrer stated is that "the bill on its face shows that the plaintiff has a remedy at law to have his rights in this case determined, in that the ordinance set forth in said bill provides that the plaintiff shall have the right to apply to the judge of the municipal court to have his permit reinstated, and that said plaintiff has failed to exercise his legal right and cannot apply for an injunction

until he has exhausted his legal remedy." The trial court sustained this ground of demurrer and dismissed the bill.

██ ██ The contention made by the appellant that the ordinance under which his permit was granted provided that it should "be perpetual unless revoked as provided in this chapter," and that as no provision was made in said chapter for revocation thereof, therefore, the city could not thereafter by amendment of the ordinance provide for revocation of his permit, is not well made. The power of a city to control and regulate the use of its streets is a continuing power to be exercised as often and whenever the city may think proper. *Washington, etc., Ry. Co.* v. *City Council of Alexandria,* 98 Va. 344, 36 S. E. 385. The issuance and revocation of such permits by a city is merely a means of exercising the police power of the State delegated to the city to regulate the use of the public highways in the interest of the public safety and welfare. The Constitution of Virginia expressly provides that "the exercise of the police power of the State shall never be abridged." (Constitution Virginia, section 159.)

But the appellant contends that the provision of this ordinance authorizing the chief of police "to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city" is void because it is a delegation of legislative power to an administrative officer. If this contention is good, then the ground of demurrer relied upon by the appellee is not good.

██ ██ When acting upon an application for the reinstatement of a permit revoked by the chief of police, the judge of the municipal court is acting as an administrative officer, and not in a judicial capacity; and his discretionary power is the same as that of the chief of police, except that the exercise of his discretion may supersede that of the chief of police. He is controlled by no more specific definition of what constitutes being unfit to drive an auto-

mobile on the streets of the city, or rule for determining what constitutes such unfitness, than is the chief of police. Therefore, if the provisions of the ordinance authorizing the chief of police to revoke a permit be void because it is a delegation of legislative powers to an administrative officer, and vests an arbitrary and uncontrolled discretion in the chief of police, the provisions of the ordinance authorizing the exercise of the same discretion by the judge of the municipal court upon an application for reinstatement of the permit is also void (*State ex rel. Makris* v. *Superior Court*, 113 Wash. 296, 193 Pac. 845, 12 A. L. R. 1428); and the provision of the ordinance that the person whose permit has been revoked by the chief of police may apply to the judge of the municipal court for a reinstatement thereof cannot constitute an adequate remedy at law.

■ The right of a citizen to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right which he has under his right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right in so doing to use the ordinary and usual conveyances of the day; and under the existing modes of travel includes the right to drive a horse-drawn carriage or wagon thereon, or to operate an automobile thereon, for the usual and ordinary purposes of life and business. It is not a mere privilege, like the privilege of moving a house in the street, operating a business stand in the street, or transporting persons or property for hire along the street, which a city may permit or prohibit at will.

■ The exercise of such a common right the city may, under its police power, regulate in the interest of the public safety and welfare; but it may not arbitrarily or unreasonably prohibit or restrict it, nor may it permit one to exercise it and refuse to permit another of like qualifications,

under like conditions and circumstances, to exercise it. *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259; *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915-F, 840; *Hadfield* v. *Lundin*, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918-B, 909, Ann. Cas. 1918-C, 942.

The regulation of the exercise of the right to drive a private automobile on the streets of the city may be accomplished in part by the city by granting, refusing, and revoking, under rules of general application, permits to drive an automobile on its streets; but such permits may not be arbitrarily refused or revoked, or permitted to be held by some and refused to other of like qualifications, under like circumstances and conditions.

It has been said that when the State or a city has the power to prohibit the doing of an act altogether, it has the power to permit the doing of the act upon any condition, or subject to any regulation, however arbitrary or capricious it may be; and may lawfully delegate to executive or administrative officers an uncontrolled and arbitrary discretion as to granting and revoking permits or licenses to do such acts; *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259, 263; *State ex rel. Crumpton* v. *Montgomery*, 177 Ala. 221, 59 So. 294; *State* v. *Gray*, 61 Conn. 39, 22 Atl. 675; *City of St. Joseph* v. *Levin*, 128 Mo. 588, 31 S. W. 101, 49 Am. St. Rep. 577; *Brown* v. *Stubbs*, 128 Md. 129, 97 Atl. 227.

This doctrine has been pronounced most often in cases involving the granting, refusing, and revoking of licenses or permits to sell intoxicating liquors, or to do other things which because of their character are, or tend to be, injurious, as for instance keeping a gambling house or a bawdy-house, or operating a junk or pawn shop; and it has also been applied to cases involving permits or licenses to transport persons or property for hire along the streets. See *Taylor* v. *Smith*, *supra*, and cases there cited. But this doctrine has no application to permits issued for the pur-

pose of regulating the exercise of the common right to operate a private automobile on the streets of a city, in the usual and ordinary way, to transport the driver's person and property.

It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience or in effect nullified for the sake of expediency. It is the prerogative and function of the legislative branch of the government, whether State or municipal, to determine and declare what the law shall be, and the legislative branch of the government may not divest itself of this function or delegate it to executive or administrative officers.

This does not mean, however, that no discretion can be left to administrative officers in administering the law. Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms. Without this power legislation would become either oppressive or inefficient. There would be confusion in the laws, and in an effort to detail and particularize, the law would miss sufficiency both in provision and detail. *Block* v. *Chicago*, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. R. 219; *Mutual Film Corp.* v. *Ohio Indus. Comm.*, 236 U. S. 239, 35 Sup. Ct. 387, 59 L. Ed. 552, Ann. Cas. 1916-C, 296. This is particularly true where the discretion to be exercised by administrative officers relates to police regulations designed to protect the public morals, health, safety and general welfare. As said by Burks, J., in *Taylor* v. *Smith, supra:* "A city may, in the exercise of its police power, invest its administrative and executive officers with a reasonable discretion in the performance of duties devolved upon

them to that end, whenever it is necessary for the safety and welfare of the public." But, it should be added, the reasonable discretion which may be vested in its administrative officers is limited to a discretion in its essence ministerial and not legislative, though it may be such as may be exercised by the legislature.

In principle, legislation and administration are quite distinct powers; but in practical application the line which separates their exercise is not clearly marked or easily defined. However, in their definition in practical application lies the difference between government by legislation and government by bureaucracy, which, though contrary to the genius of our government, some courts have gone far towards sustaining.

The decisions of the various courts, and sometimes of the same court, are in conflict as to what constitutes a delegation of legislative power to administrative officers and bureaus. The majority of the cases lay down the rule that statutes or ordinances vesting discretion in administrative officers and bureaus must lay down rules and tests to guide and control them in the exercise of the discretion granted in order to be valid; but several courts apply the rule with varying degree of strictness. Other cases go so far in sustaining, especially in cases involving police regulation, grants of discretionary power to administrative officers and bureaus without prescribing any definite rule or specified conditions to which the officers must conform, as, in effect, to substitute for government by legislation, government by administrative officers and bureaus. For a collection of the cases on this subject see note in 12 A. L. R., page 1435 et seq.

Where a statute or ordinance assumes to regulate the exercise of a common right, such as that here involved, by requiring a permit for the exercise thereof, which is to be granted or refused and may be revoked by an adminis-

trative officer in his discretion, the correct principles for determining whether it is void because it delegates legislative power to the administrative officer are stated by the court in *Mutual Film Corp.* v. *Ohio Industrial Commission,* 236 U. S. 239, 35 Sup. Ct. 387, 392, 59 L. Ed. 552, Ann. Cas. 1916-C, 296, in the following language: "The legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply."

Mere matters of detail within the policy, and the legal principles and standards established by the statute or ordinance, may properly be left to administrative discretion, for the determination of such matters of detail is more essentially ministerial than legislative. In declaring the policy of the law and fixing the legal principles and standards which are to control in the administration of the law, general terms, which get precision from the technical knowledge or sense and experience of men and thereby become reasonably certain, may be used; and an administrative officer or bureau may be invested with the power to ascertain and determine whether the qualifications, facts or conditions comprehended in and required by such general terms exist, and whether the provisions of the law so fixed and declared have been complied with in accordance with the generally accepted meaning of the words. *Mutual Film Corp.* v. *Ohio Industrial Commission, supra; Yee Bow* v. *Cleveland,* 99 Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424; *Block* v. *Chicago,* 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219.

The following statutes and ordinances to which this last mentioned principle is applicable have been upheld, though sometimes upon other grounds: A statute empowering a State Board of Censors to permit exhibitions of "only such

films as are in the judgment and discretion of the Board of Censors of a moral, educational or amusing and harmless character," *Mutual Film Corp.* v. *Ohio Industrial Commission, supra;* an ordinance empowering the chief of police to refuse permits for the showing of pictures which are "immoral or obscene," *Block* v. *Chicago,* 239 Ill. 251, 87 N. E. 1011, 1014, 130 Am. St. Rep. 219; a statute granting discretion to the Board of Dental Examiners to determine in granting licenses to practice dentistry what constitutes "a reputable dental college," *Ex parte Whitley,* 144 Cal. 167, 77 Pac. 879, 1 Ann. Cas. 13; a statute providing for revocation of a physician's license for fraud in obtaining the certificate, the commission of criminal abortion, the conviction of a felony involving moral terpitude, or chronic inebriety, and for other "grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public," *Forman* v. *State Board of Health,* 157 Ky. 123, 162 S. W. 796, 798; a statute requiring the Health Commissioner in granting a permit to conduct a laundry to ascertain whether the sanitary and drainage arrangements were sufficient to protect the public health and whether adequate ventilation, plumbing and draining facilities had been provided, *Yee Bow* v. *Cleveland,* 99 Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424; an ordinance empowering officers of the police department "to direct all traffic in accordance with the provisions of this ordinance or in emergencies as public safety or convenience may require," *City of Chicago* v. *Marriotto,* 332 Ill. 44, 163 N. E. 369, 60 A. L. R. 501.

In *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 37 S. Ct. 217, 222, 61 L. Ed. 480, L. R. A. 1917-F, 514, Ann. Cas. 1917-C, 643, the court held an ordinance valid which required an applicant for a license to deal in corporate securities to satisfy the commissioner that he was a person of good repute, saying: "Reputation and character are quite tangi-

ble attributes, but there can be no legislative definition of them that can automatically attach to or identify individuals possessing them, and necessarily the aid of some executive agency shall be invoked."

The ordinance here in question declares the policy of the law and fixes the legal principles which are to control the chief of police in granting a driving permit. The applicant must demonstrate his ability to safely and properly operate motor vehicles upon the streets of the city, and demonstrate that he knows the traffic laws of the State and the city, and shall be sixteen years of age or over. While the ordinance provides that no permit shall be issued to the applicant unless his examination by the chief of police shall disclose that he possesses such ability and knowledge *"as in the judgment* of the chief of police qualifies such person to receive such permit," the discretion here vested in the chief of police is essentially ministerial and not legislative.

But when we come to examine the provisions with reference to revocation of permits by the chief of police the policy of the law and the legal principles which are to control the action of the chief of police are not determined or determinable from the terms of the ordinance.

The ordinance specifically provides that conviction of a felony or of a violation of the prohibition law shall of itself operate to revoke a driving permit for a period of twelve months, and that if the holder of the permit shall be convicted of violation of the traffic laws three times within any one year his permit shall be revoked for such time, not exceeding one year, as the judge of the municipal court shall determine; and it is necessarily implied that subsequent lack of the requisites for the issuance of a permit constitutes unfitness to drive on the streets of the city within the policy of the ordinance.

Thus far the policy of the law may be said to be declared; but it is clear that it is intended by the ordinance to vest

the chief of police with authority to revoke permits for other causes, if *in his opinion* such causes render the holder of a permit unfit to drive on the streets of the city. But for what other causes is it the policy of the law that the chief of police may revoke a driving permit? What legal principles shall guide and control him in determining what other causes, characteristics or acts, or things done or omitted, make a man unfit to drive on the streets of the city of Lynchburg? To what standard of conduct must the holder of a permit conform to be immune from the official axe? Are the causes for which a permit may be revoked by the chief of police only those which relate to the proper use of the streets and highways and the safety of persons and property thereon? Or does the policy of the law extend so far as to authorize the revocation of a permit because the holder has done things which have a relation to the general security of the property of citizens (as, for instance, committed petit larceny), or to the morals of the community (as, for instance, transported women of bad reputation in his automobile)? Is it the policy of this ordinance to authorize the revocation of a permit because the holder is not of good character, or because he has had an accident which caused damage for which he is financially unable to pay?

The ordinance has made conviction of any felony a cause for revocation. May the chief of police add thereto as cause for revocation the conviction of any misdemeanor? Or, if he may not make all misdemeanors cause for revocation, then what misdemeanors may he make cause for revocation?

The ordinance has made conviction of the holder of a permit of a violation of the traffic laws three times in any one year cause for revocation for a period not exceeding one year. May the chief of police in his discretion so modify this express provision as to make a single violation of the

traffic laws a cause for revocation? If so, for what period of time may he revoke the license for a single violation of a provision of the traffic laws?

The ordinance has made conviction of a violation of the prohibition law cause for revocation for twelve months. May the chief of police add to this suspicion of or reputation of having violated the prohibition law as cause for revocation?

And may the chief of police and judge of the municipal court make the period of revocation for causes not specified in the ordinance much exceed a year, or indeed perpetual, by refusing to issue another permit or to reinstate the permit revoked?

Certainly the ordinance itself affords no answer to these questions as to the scope of the policy of the law therein declared. It is left wide open to the uncontrolled discretion of the chief of police in each individual case. The principle that an ordinance may use general terms in defining the declared policy of the law and in fixing the legal principles which are to control the discretion of the administrative officer in administering the law, where the technical knowledge or sense and experience of men render the terms reasonably certain, has no application here; for the term "unfit to drive an automobile on the streets of the city" is clearly intended to extend beyond what can be said the technical knowledge or the sense and experience of men have rendered reasonably certain.

While the city of Lynchburg, in the exercise of its police power, may revoke driving permits for some cause unrelated to the use of the public highways and the safety of persons and property thereon, it must do so by legislative enactment and not by administrative edict.

That portion of the ordinance here in question which authorizes the chief of police "to revoke the permit of any driver, who, in his opinion, becomes unfit to drive an au-

tomobile on the streets of the city," fails to declare the policy of the law and fix the legal principles which are to control the discretion of the chief of police in the revocation of licenses in determining what constitutes unfitness to drive an automobile on the streets of the city; and is void because it delegates powers essentially legislative to an administrative officer.

This being true, the provision that the person whose permit is revoked by the chief of police may apply to the judge of the municipal court for a reinstatement thereof cannot constitute an adequate remedy at law.

But it is said that a suit for injunction will not lie in the instant case because no property rights of the appellant have been invaded. Whether a right to use the public highways for the ordinary and usual purposes of life be a property right or not, it is a very valuable right, not a mere privilege.

The invalidity or unconstitutionality of a statute or ordinance is not of itself a ground of equity jurisdiction. A court of equity has not jurisdiction to enjoin acts only because they are attempted or threatened under color of an unconstitutional or void statute or ordinance. Further circumstances must be shown which bring the case within some recognized ground of equity jurisdiction, 14 R. C. L., Injunctions, section 141; *Coal & Coke Ry. Co.* v. *Conley, et al.*, 67 W. Va. 129, 67 S. E. 613; but inadequacy of legal remedy or irreparable injury are well recognized grounds of equity jurisdiction.

It is recognized that an injunction will lie to enjoin the threatened enforcement of an invalid statute or ordinance where the lawful use and enjoyment of private property will be injuriously affected by its enforcement (*Bristol, etc., Co.* v. *Bristol*, 97 Va. 304, 33 S. E. 588, 75 Am. St. Rep. 783; *City of Roanoke* v. *Bolling*, 101 Va. 182, 43 S. E. 343), or where the right of a person to conduct a lawful

business will be injuriously affected thereby (*Parrish* v. *City of Richmond*, 119 Va. 180, 89 S. E. 102), unless the remedy at law be manifestly as complete and adequate as an injunction suit. But it has been said that it is beyond the scope of the powers of a court of equity to enforce personal rights as distinguished from property rights. 32 C. J., Injunctions, section 430, page 272.

This distinction, we think, is not well made. Fundamental personal rights, such as the right of a person to travel the public highways of the State, are not less sacred and valuable rights, or less subject to the protection of a court of equity, in a proper case, than are property rights.

An injunction suit is often a more appropriate and effective method of resisting the invasion of or interference with such a personal right under color of void statute or ordinance than any common law remedy; and where the remedy at law is not as complete and as fully adequate as an injunction suit, or where the threatened or attempted enforcement of a void statute or ordinance will do irreparable injury to a person in interfering with the exercise of such a common fundamental personal right, a suit for injunction will lie. And, by irreparable injury is meant an injury of such a nature that fair and reasonable redress may not be had in a court of law and that to refuse the injunction would be a denial of justice. High on Injunctions (4th Ed.), section 22.

Freedom from the restraint imposed by this void ordinance upon the exercise of Thompson's common right to drive his automobile on the streets of the city of Lynchburg is the real object of the complainant's bill. His only remedies at law were, (1) to proceed by petition for mandamus to compel the chief of police to restore to him his driving permit, or (2) to wait until arrested upon the charge of driving without a permit and then interpose the defense that the provisions of the ordinance under which

his permit had been taken from him were void. In the instant case, neither of these remedies is as complete and adequate as a suit for injunction to protect the complainant against the wrongful interference, under the color of a void ordinance, with the lawful exercise of his common personal right to drive an automobile; and the bill alleges that unless the chief of police be restrained, complainant "will sustain irreparable injury in his pursuance of happiness and in acquiring and the use of his property."

The court erred in dismissing the bill, and the decree of the court will be reversed and the case remanded to the trial court for further proceedings thereon.

*Reversed.*