# CIRCUIT COURT OF ROCKINGHAM COUNTY

William S. Stickley

  v.

Rockingham County
Board of Supervisors

November 13, 1998

Case No. (Chancery) 16621

BY JUDGE JOHN J. MCGRATH, JR.

The Petitioner, who owns a 200+ acre farm located in Rockingham County, Virginia, was granted on September 15, 1997, a permit by the Virginia Department of Game and Inland Fisheries to propagate and sell chukar, northern bobwhite quail, and ringneck pheasants from his farm. This permit provided, *inter alia,* that "this permit does not absolve the permittee of any responsibilities or conditions of any other federal, state, or local laws and regulations … ." (Exhibit G.) At or about the same time the Petitioner also applied to the Virginia Department of Game and Inland Fisheries to establish a licensed shooting preserve on a designated 100 acre portion of his farm, and the proposed name of the licensed shooting preserve was to be "Meadow View Shooting Reserve." On this application to the Virginia Department of Game and Inland Fisheries, the Petitioner, in response to the question of whether he was in compliance with all zoning and land use requirements, indicated "pending."

Simultaneous with these two applications to the Virginia Department of Game and Inland Fisheries, the Petitioner, Dr. Stickley, allegedly contacted the Rockingham County Zoning Administrator and asked what, if any, zoning requirements applied to operating a private shooting reserve. According to the allegations in the Petition, the Petitioner was informed that he would need to file a special use permit application because his entire farm was zoned General

Agriculture A-2 under § 17-25 of the Rockingham County Code. According to the allegations, the Zoning Administrator indicated that a private shooting preserve was not a permitted use under § 17-26 of the Rockingham County Zoning Ordinance. Thereafter, on September 8, 1997, the Petitioner filed a special use permit application requesting that he be given a special use permit for a 100 acre portion of the farm on which he intended to operate a "Private Shooting Reserve." After a public hearing, the application was tabled by the Board of Supervisors, and a site inspection was conducted by certain members of the Board of Supervisors and staff. As a result of that inspection, the supervisors and administrative personnel became aware of the fact for the first time that the Petitioner was operating a facility for propagating (i.e., raising from eggs) chukar, northern bobwhite quail, and ringneck pheasants on a portion of his farm.

After the site inspection had taken place, the matter came before the Board for the second time on November 19, 1997. The Board of Supervisors at that time denied the Petitioner's request for a special use permit to operate a Private Shooting Reserve on the 100 acre portion of his farm. In communicating this result to the Petitioner, Diana M. Cobb, the Zoning Administrator of Rockingham County, in a letter dated November 22, 1997, indicated that the Board had denied his special use permit application which they had considered as an extension of two special uses which are permitted pursuant to § 17-27 of the Code in A-2 agricultural districts. Those two uses permitted with a special use permit were as a "game farm" (§ 17-27(AX) of the Code of Rockingham County) and as a "shooting range" (§ 17-27(L) of the Code of Rockingham County). In addition, the Zoning Administrator in her November 22, 1997, letter concluded that "within thirty days all of the birds are to be removed from the property."

This was the posture of the matter when litigation commenced. Initially, on December 19, 1997, the Petitioner filed a Petition for Review in the Circuit Court of Rockingham County. On August 19, 1998, an Amended Petition of Review was filed asserting in essence that:

(1) The County had no authority under its Zoning Ordinances to prohibit the operation of a private shooting reserve;

(2) That, properly interpreted, the County Zoning Ordinance does not prohibit the operation of a private shooting preserve in land zoned Agricultural A-2; and

(3) Refusal of the Rockingham County Zoning Administrator to transmit Petitioner's appeal to the Board of Zoning Appeals was in violation of § 15.2-2309 of the Code of Virginia and § 17-219 of the Code of Rockingham County.

Although the Board of Supervisors' rejection of his request for a special use permit and the Zoning Administrator's letter of November 22, 1997, did not in any way purport to prohibit the Petitioner or others from "hunting" on his farm, the Petitioner has characterized the acts of the Board as a *de facto* denial of his right to raise birds on his property and to hunt during the extended hunting season permitted under the statutes for hunting conducted on private shooting preserves. The Respondent more correctly characterizes the issues as the right of the County to prohibit the pen raising of birds that may present a biological hazard to the local poultry industry.

Petitioner has moved for summary judgment on three grounds:

1. The Board of Supervisors of Rockingham County is without authority under the Code of Virginia or the Rockingham County Code to require a petitioner to apply for a special use permit in order to operate a private shooting preserve.

2. The Board of Supervisors of Rockingham County was wrong as a matter of law in considering the petitioner's operation of raising quail, chukars, and pheasants from eggs as a "game farm" which is prohibited under the Code of Rockingham County except upon the issuance of a special use permit pursuant to § 17-27(AX) of the Code of Rockingham County.

3. The Rockingham County Zoning Administrator's refusal to transmit Petitioner's appeal of her interpretations of the zoning ordinances to the County Board of Zoning Appeals was a violation of § 15.2-2309 of the Code of Virginia and § 17-219 of the Code of Rockingham County.

Both parties agree that the grounds for summary judgment set out in 3, *supra*, are at this point moot since the matter is before the Circuit Court on a petition of the underlying denial of a special use permit by the Board of Supervisors. Therefore, further consideration of this matter would be in the nature of rendering an advisory opinion, and the Court declines to rule upon this issue with a case in this procedural posture.

The County opposes the Motion for Summary Judgment on the two grounds alleged for a number of reasons. Most importantly, the County asserts that the Petitioner erroneously characterizes this case as involving the "regulation of hunting in Rockingham County" and asserts that the case merely involves whether or not the County can prohibit by zoning regulation the maintaining and releasing of game birds which would be potentially devastating to the County's poultry industry. The County further argues that the denial of a request for a Special Use Permit was based on concerns expressed by neighbors about potential hazards arising from the operation of a private game preserve and also upon the concerns expressed by the poultry industry regarding the potential devastating effects that the raising and

releasing of game birds could have on the poultry industry due to the spread of infectious diseases.

## I. *Does the Board of Supervisors of Rockingham County Have the Authority to Prohibit by Zoning the Raising of Game Birds on Private Property?*

The Petitioner's argument concerning the Board of Supervisors lack of authority is premised upon a strict interpretation of the Dillon Rule and the argument that, even if the Board does have authority to regulate the raising of game birds on private property, that authority has been preempted by the extensive regulation by the Commonwealth of hunting and the operation of game preserves and sanctuaries set forth in Title 29.1 of the Code of Virginia. Petitioner's argument concerning the alleged violation of the Dillon Rule was effectively dealt with by the Supreme Court in *Resource Conservation Management, Inc. v. Board of Supvrs. of Prince William County*, 238 Va. 15 (1989), where the Court held that the predecessor to § 15.2-2280 of the Code gave broad authority to local governing bodies to restrict the use of land under the Dillon Rule. In reviewing the Supreme Court's opinion in the above-referenced case, it appears to the Court that the Board of Supervisors clearly has authority to prohibit the raising of game birds from eggs so long as that authority is not otherwise preempted by enactments of the Legislature or utilized in a manner which otherwise violates the law.

The Petitioner further argues that the General Assembly has granted broad and pervasive powers to the Board of Game and Inland Fisheries under § 29.1-100 *et seq.* of the Code of Virginia governing the hours and seasons of hunting and the operation of game preserves and that this comprehensive statutory scheme operates to preempt as a matter of law the authority of a county Board of Supervisors to legislate by means of a zoning ordinance in a fashion that places additional restrictions upon such activities.

The burden upon the Petitioner to show a preemption of a county's ability to regulate the use of land is a difficult burden. The more recent cases have quite clearly indicated that in order for there to be a preemption of a county's delegated zoning authority, such preemption must be expressed and clearly set out the statutory framework. A review of Title 29 of the Code of Virginia shows that there is a comprehensive regulation of wildlife management entrusted to the Department of Game and Inland Fisheries, but there is no indication in the statutory scheme that the Legislature intended to preempt the otherwise appropriate power to regulate land use which has been delegated to the Board of Supervisors of the counties. See, e.g, *Ticonderoga Farms v. County of Loudoun*, 242 Va. 170 (1991); *Resource Conservation*

*Management, Inc. v. Board of Supvrs. of Prince William County*, 238 Va. 15 (1989). For example, § 29.1-600.1 of the Game and Inland Fisheries statute provides that the Board of Game and Inland Fisheries "shall promulgate regulations necessary to carry out the provisions of this chapter." Although the same section of the Code provides that "commercially operated preserves initially licensed on or after July 1, 1994, shall meet local zoning and land use requirements," the statutory scheme is silent on the issue of whether private reserves must also comply with local zoning and land use requirements. However, the mere silence on the issue does not mean that private shooting preserves need not meet the zoning and land use ordinances of the communities in which they are located. The Legislature's silence on the issue does not amount to the clear and expressed preemption of local ordinances that are required under the *Resource Conservation Management* Case and the *Ticonderoga Farms* Case. Moreover, the licensed shooting preserve application form promulgated by the Director of the Virginia Department of Game and Inland Fisheries appears to require both the applicant for a commercial shooting preserve and a private shooting preserve to state whether or not they are "in compliance with all zoning and land use requirements." (See Exhibit A, p. 2.) This would indicate that the Department is of the view that zoning ordinances must be followed by both commercial and private shooting preserves.

In short, on this Motion for Summary Judgment, the Petitioner has failed to show that the Board of Supervisors lacks legal authority to regulate the manner in which and the extent to which landowners may raise pen-reared wildlife. Therefore, the Petitioner's Motion for Summary Judgment is hereby denied.

II. *Application of Rockingham County Zoning Ordinance to Petitioner's Operation of Raising Pen-Reared Quail, Chukars, and Pheasants*

The zoning ordinances adopted by Rockingham County are of a classification commonly known as the "inclusive" type of zoning ordinance. In short, this type of zoning ordinance, the validity of which has been long recognized in Virginia, provides that the ordinance list uses which are permitted on land and any use not specifically permitted is prohibited. See, *e.g., Wiley v. Hanover County*, 209 Va. 153 (1968). The Rockingham County Ordinance in § 17-13(C) provides that "any use not specifically permitted shall be prohibited." The types of uses permitted as a right in Agricultural A-2 zones are set forth in § 17-26 of the Rockingham Zoning Ordinance. There is no listed use which is permitted as of right which would even remotely encompass

the land use requested by the Petitioner. However, the Zoning Ordinance further provides that special use permits may be obtained for a specifically itemized list of uses which are not included in the uses of right. It is this exhaustive list of uses permitted by a special permit which gives rise to some of the confusion in this litigation.

When the applicant filed a request for a special use permit, he indicated that he was applying for a special use permit to operate a "private shooting reserve." Section 17-27 of the Rockingham County Code does not permit land, even with a special use permit, to be used as a "private shooting reserve." However, it does permit the Board of Supervisors to issue a special use permit which is not exactly enumerated within the confines of § 17-27 but which is a use "which in the opinion of the Zoning Administrator [is] similar to the foregoing uses, either permitted uses or special uses." (§ 17-27(AO) of the Code of Rockingham County.) Utilizing this provision, the Zoning Administrator indicated that the Petitioner's request for a special use permit would be considered as an analogous use to § 17-27(L) (shooting range) and § 17-27(AX) (game farm). In her letter to the Petitioner informing him of the Board of Supervisors' rejection of his special use permit, the Zoning Administrator stated as follows:

> This application was allowed to be heard under an extension of two uses in the A-2 district of the Rockingham County Code. Those uses are game farm and shooting range. This was done as the game farm allowed for the actual raising and keeping of the birds and the shooting range allowed for the hunting that was to take place on the property. With the denial of the special use permit, these uses are not allowed on the property … . This is to notify you that within thirty days all of the birds are to be removed from the property. This shall be our only notice and failure to comply may result in legal action.

(Exhibit H.)

Petitioner argues that the Board of Supervisors and the Zoning Administrator erred as a matter of law in finding that the Petitioner's operation of raising pen-reared quail, chukar, and pheasant from eggs was a "game farm" and thus required a special use permit before Petitioner could so operate in an A-2 agricultural district. Petitioner's reasoning is that the Virginia Code relating to game and inland fisheries provides in its definitional section a series of definitions of "game," "game animals," "wildlife," "migratory game birds," and "non-migratory game birds," which carefully distinguishes between "game animals" such as deer, bear, rabbit, fox, squirrel, bobcat, and raccoon and

"non-migratory game birds," such as grouse, bobwhite, quail, turkey, etc. From this series of definitions set forth in the Code of the Commonwealth of Virginia, Petitioner argues that the Zoning Code of Rockingham County in defining a "game farm" as "the keeping, breeding, or sale of animals commonly found in the wild and hunted or trapped for food or sport" is an impermissibly broad definition because it fails to distinguish between "game" as that term is used in the Code of Virginia and "non-migratory birds" or "wild fowl." Petitioner's argument is wide of the mark for two reasons. First, the Rockingham County Zoning Ordinance provides in § 17-5 (the definitional section) that "except as otherwise provided herein, all words shall have the customary dictionary meaning." The definition of "game farm," although broad, is very clear. It encompasses within the terms of the statute the keeping, breeding, or sale of animals commonly found and hunted or trapped for food or sport. It cannot be gainsaid that a bird is part of the animal kingdom. Moreover, looking at the common dictionary definition of game, one can hardly reach another conclusion. For example, *Black's Law Dictionary* defines "game" as "wild birds and beasts, the word includes all game birds, game fowl, and game animals." The *Oxford Dictionary and Thesaurus* (Am. ed. 1996) defines "game" as "wild animals or birds hunted for sport or food." *The American Heritage Dictionary* (1980) defines "game" as "wild animals, birds, or fish hunted for food or sport." Thus, it appears clear that the Zoning Ordinance defining a "game farm" includes within its definition a farm on which are confined birds which are commonly found in the wild and hunted or trapped for food or sport.

Moreover, the Petitioner's argument in this regard proves too much. If a "game farm" does not include a location on which birds, which are otherwise normally wild and hunted for sport or food, are raised, then the operation of such a facility is not even permitted under the County's inclusive Zoning Ordinance as a use for which a special use permit can be obtained. In either event, the Petitioner's argument here is wide of the mark. Therefore, Petitioner's Motion for Summary Judgment on the second ground advanced is hereby denied.

This matter, however, is not concluded. The Petitioner has still retained the right to challenge as arbitrary and capricious the application of the Zoning Code and the denial of his request for a special use permit. However, the Court hereby denies the three motions for summary judgment filed by the Petitioner on the grounds previously stated.

The Clerk of the Court shall certify a copy of this to G. Chris Brown, Esquire, counsel for the Respondent, and to Bonnie L. Paul, Esquire, counsel for Petitioner.