RESOURCE CONSERVATION MANAGEMENT, INC., ET AL.

V.

BOARD OF SUPERVISORS OF PRINCE WILLIAM COUNTY,
ET AL.

Record No. 880312

June 9, 1989

Present: All the Justices

*Marc E. Bettius (Robert H.J. Loftus; Miles & Stockbridge*, on brief), for appellants.

*Ross G. Horton, Assistant County Attorney; Patrick M. Mc-Sweeney (John H. Foote, County Attorney*, on brief), for appellee Board of Supervisors of Prince William County.

No brief or argument for appellees Carol N. Latham, John B. Vance and Halt Dump, Inc.

Chief Justice Carrico delivered the opinion of the Court.

This appeal involves Ordinance No. 86-147, adopted by the Board of Supervisors of Prince William County (the Board) on October 7, 1986. The ordinance's preamble states that its purpose is to "prohibit the operation of privately owned and operated debris landfills." The text of the ordinance amends the county's zoning ordinance by deleting those sections which permitted debris landfills by special use permit in three zoning districts of the county.

On October 31, 1986, the petitioners, Resource Conservation Management, Inc. (RCM), Raymond C. Hawkins (Hawkins), and RCH Land Sales, Inc. (RCH Land), filed in the court below a petition for declaratory judgment and injunctive relief against the Board. In the petition, the petitioners alleged that RCH Land is the owner of approximately 368 acres of land in Prince William County, that Hawkins is the owner of an adjacent tract of 10 acres, that RCM is the lessee of both tracts, and that the property is located in an A-1 zoning district.

The petitioners further alleged that RCM had filed with the appropriate officials of Prince William County an application for a special use permit to operate a debris landfill on the site. At the time of filing, a debris landfill was a permitted use in an A-1 district, subject to the issuance of a special use permit.[1]

The petitioners also alleged that while RCM's application was pending, the Board adopted Ordinance No. 86-147, effectively eliminating from all zoning districts the establishment, maintenance, and operation of debris landfills, which action was in violation of the petitioners' rights and in excess of the Board's delegated powers. The petitioners prayed that Ordinance No. 86-147 be declared void and that the Board be enjoined from interfering with the petitioners' efforts to establish and operate a debris landfill on the subject property.

After the Board filed its answer, the parties engaged in discovery. The petitioners then filed a motion for summary judgment, alleging that there was "no genuine issue of material fact" and that "the petitioners [were] entitled to judgment as a matter of law." The Board countered with a motion for summary judgment of its own in which it agreed that "there [were] no contested is-

---

[1] Debris landfills were also permitted in M-1 and M/T zoning districts, subject to the issuance of special use permits.

sues of material fact" but asserted that it was "entitled to judgment on these issues as a matter of law."

On September 10, 1987, the trial court heard argument on both motions for summary judgment. The petitioners maintained that Ordinance No. 86-147 was "on its face a violation of Dillon's rule" because the General Assembly had not conferred upon the Board either expressly or by necessary implication the authority to prohibit landfills in the county.[2] The petitioners also argued that the Virginia Waste Management Act preempted the action taken by the Board. The petitioners made the further argument that the Board had engaged in "patent discrimination, without any sense of classification [to justify] it" by arrogating unto itself the operation of debris landfills to the exclusion of all other persons and entities.

In a written opinion, the court stated that from the oral argument and the briefs submitted in support thereof, there were three issues to be disposed of in the case:

1) Whether the ordinance in question is invalid 'as drafted' because it lacks sufficient enabling legislation.

2) Whether the ordinance enacted is invalid because the action taken by the County has been preempted by the Virginia Waste Management Act.

3) Whether restricting the ownership and operation of debris landfills to public entities is a valid exercise of the County's police power.

The court held that on Issue No. 1, dealing with the Board's authority to enact Ordinance No. 86-147, summary judgment should be entered in favor of the Board. With respect to Issue No. 2, concerning the question of preemption, the court stated it would withhold judgment until it could dispose of Issue No. 3, regarding the validity of the Board's exercise of its police power.

Noting that the petitioners' argument with respect to Issue No. 3 involved a claim of discriminatory action amounting to a denial of equal protection, the court stated that the taking of evidence would be necessary "to determine where the line should be drawn" between land uses which the Board could reserve for itself

---

[2] Under Dillon's Rule, effective in Virginia, "the powers of boards of supervisors are fixed by statute and are limited to those conferred expressly or by necessary implication." *Bd. of Supervisors v. Horne*, 216 Va. 113, 117, 215 S.E.2d 453, 455 (1975).

and those in which private enterprise should be allowed to participate.

Upon receipt of the trial court's opinion, counsel for the petitioners wrote the court stating that the petitioners did not intend to submit any evidence and asking the court to "rule on the remaining issues in this case at this time." In a second written opinion, the court stated it remained of opinion that evidence was necessary on Issue No. 3. The court held, however, that in the absence of evidence showing "where the line should be drawn in the context of solid waste disposal," the Board could "rest on the presumption of validity attached to its legislative powers to enact zoning ordinances."

With respect to the issue of preemption, the trial court held that Ordinance No. 86-147 "is not in conflict with the Virginia Solid Waste Management Act and is thus not preempted by said Act." The court then entered final judgment in favor of the Board.

On appeal, the petitioners assign error to all three rulings of the trial court, but they address on brief only two of the errors assigned, *viz.*, (1) that the court erred "in ruling that the county possessed delegated authority to ban private ownership of debris landfills," and (2) that the court erred "in ruling that the county ordinance was not preempted by the Virginia Waste Management Act." The petitioners do not address and, hence, have abandoned their assignment of error concerning the trial court's third ruling, which upheld the as-applied validity of Ordinance No. 86-147 in the absence of an evidentiary showing by the petitioners that they had suffered a denial of equal protection.

With respect to the question of the Board's authority to enact Ordinance No. 86-147, the petitioners reiterate their reliance upon Dillon's Rule and emphasize their belief that the Board has no "delegated authority to enact an ordinance prohibiting the private ownership of debris landfills." The petitioners recognize that Code § 15.1-486 confers upon localities the general authority to enact zoning ordinances and that zoning action taken pursuant to the Code section is entitled to a presumption of validity. The petitioners argue, however, that the ordinance involved in this case does not enjoy a presumption of validity because it is not a zoning ordinance but one regulating the ownership of land.

Ordinances enacted pursuant to Code § 15.1-486, the petitioners opine, "traditionally deal with the arrangement of particular uses by categories: the size, height, area, bulk, location, erection,

and similar matters, in connection with the use of private property." Ordinance No. 86-147 does not follow the traditional pattern, the petitioners maintain, but, rather, amounts to a mandate specifying who may or may not own or operate a particular use once the existence of the use "is assumed."

The petitioners are correct in saying that zoning ordinances enacted pursuant to Code § 15.1-486 may deal with "the size, height, area, bulk, location, erection, and similar matters, in connection with the use of private property." The petitioners, however, provide us with only a partial and slanted reading of Code § 15.1-486. The "size, height, area, bulk, location, [and] erection" language is quoted from paragraph (b) of § 15.1-486. But immediately preceding paragraph (b), the Code section states:

> *The governing body of any county* or municipality *may, by ordinance*, classify the territory under its jurisdiction or any substantial portion thereof into districts of such number, shape and size as it may deem best suited to carry out the purposes of this article, and in each district it may regulate, restrict, permit, *prohibit*, and determine the following:
> (a) *The use of land*, buildings, structures and other premises *for* agricultural, business, industrial, residential, flood plain and other *specific uses* . . . .

(Emphasis added.) We think that, by this language, the governing body of a locality is expressly authorized to prohibit a specific use of land. While the language does not specify a landfill as one of the uses that may be prohibited, such specificity is not necessary even under the Dillon Rule of strict construction. Hence, we think the Board acted well within its delegated power in prohibiting the use of property for landfills in this case.

Further, since the language of Code § 15.1-486 is sufficient to allow a local governing body to prohibit the use of property for a landfill altogether, the language is also sufficient, by necessary implication, to permit a local governing body to prohibit the use of property for that purpose by a private person or entity. Whether, in a given case, the enforcement of a prohibition against the private ownership or operation of a landfill would be found unreasonable and discriminatory would depend upon the circumstances. But we need not address that issue here, given the peti-

tioners' refusal to offer evidence in the court below on the subject of where the line should be drawn between public and private use.

Furthermore, we reject the petitioners' argument that Ordinance No. 86-147 is not a zoning ordinance and is not entitled to a presumption of validity. Clearly, the original enactment permitting landfills in zoning districts A-1, M-1, and M/T was a zoning ordinance entitled to a presumption of validity. We fail to see why, then, the enactment repealing the permission is not also a zoning ordinance and why it is not entitled to a presumption of validity sufficient, as the trial court found, to repel the petitioners' facial attack.

Because we hold that the Board possessed the delegated authority to enact Ordinance No. 86-147, we find inapposite two cases cited by the petitioners, *viz., Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959) (county acted unreasonably and arbitrarily in enacting zoning amendment restricting lot size in western two-thirds of county to two-acre minimum as means of channeling low-income segment of population into eastern one-third of county), and *Fairfax County* v. *DeGroff*, 214 Va. 235, 198 S.E.2d 600 (1973) (county exceeded authority in enacting zoning amendment requiring developer, as a condition to receiving rezoning or site-plan approval, to commit himself to build at least 15% of dwelling units as low and moderate income housing). Neither case compels a result contrary to the decision reached by the trial court in the present matter.

This brings us to the question of preemption. The petitioners contend that in the Virginia Waste Management Act, Code §§ 10-263 to 10-312 (the Act),[3] the General Assembly has provided "a comprehensive statutory scheme to regulate all aspects of solid waste management." Hence, the petitioners maintain, the state has preempted the field of waste-management regulation, with the result that any local regulation inconsistent with the state scheme "is void *ab initio*." Prince William Ordinance No. 86-147 is just such an inconsistent local regulation, the petitioners conclude, and should be declared invalid.

In the Act, the General Assembly created the Department of Waste Management and the Virginia Waste Management Board, vesting the latter with the power to "[e]xercise general supervision

---

.[3] Subsequent to the entry of the final decree in this case, Code §§ 10-263 to 10-312 were repealed and reenacted as Code §§ 10.1-1400 to 10.1-1457. Acts 1988, ch. 891.

and control over waste management activities in the Commonwealth," Code § 10-266 (1), to "[p]romulgate and enforce such regulations . . . as may be necessary to carry out its powers and duties," Code § 10-266 (11), and to "abate hazards and nuisances . . . created by the improper disposal, treatment, storage, transportation or management of [waste] substances," Code § 10-266 (20).

We disagree with the petitioners that, by passage of the Act, the General Assembly preempted the field of waste management regulation to the extent that a local land use regulation is rendered void. Rather, we think that the Act displays legislative intent to permit active local involvement in the field of waste management regulation.

While there are a number of instances throughout the various sections of the Act where this legislative intent is revealed, perhaps the most striking example is found in Code § 10-271. This section provides in part that "[n]o person shall operate any sanitary landfill or other facility for the disposal of solid waste without a permit from the Director [of the Department of Waste Management]."

The Code section goes on to provide, however, that "[n]o such permit shall be issued until the Director has received notification from the governing body of the .county, city or town in which the landfill or other facility is to be located, that the location of the landfill or other facility *is consistent with* all ordinances adopted pursuant to Chapter 11 (§ 15.1-427 et seq.) of Title 15.1 [which deals with planning, subdivision of land, and zoning]."[4] Hence, so far as the element of consistency in state vis-a-vis local regulation is concerned, the legislative policy evident in Code § 10-271 is to make state action consistent with local regulation, a concept contrary to any notion of preemption.

The petitioners dismiss Code § 10-271, however, with the terse argument that the section limits the localities' role to "questions relating to location of landfills, not ownership." This argument, however, misses the point. The issue is not whether private enterprise can have a role in solid waste management. The real question is whether the General Assembly intended to so invade the field of solid waste management as to exclude the localities

[4] Code § 10-271 further provides that the "[f]ailure of the governing body to provide notification within the thirty-day period shall constitute a waiver of the governing body's objections to issuance of a permit which are based on conflict with a local ordinance."

from exercising their usual control in the field of land use when the two fields overlap. Nothing in the Act displays such an intent. *See City of Norfolk* v. *Tiny House,* 222 Va. 414, 423-24, 281 S.E.2d 836, 841 (1981).[5]

Furthermore, when the General Assembly intends to preempt a field, it knows how to express its intention. For example, in Article 2.1 of the Act, dealing with "Litter Control and Recycling," this provision is found:

> § 10-277.14. **Preemption of certain local ordinances.** — The provisions of this article shall supersede and preempt any local ordinance which attempts to regulate the size or type of any container or package containing food or beverage or which requires a deposit on a disposable container or package.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*

---

[5] The petitioners cite two preemption decisions in support of their position that local action is preempted here. Each case is distinguishable. In *Loudoun County* v. *Pumphrey,* 221 Va. 205, 269 S.E.2d 361 (1980), a provision of the Alcoholic Beverage Control Act which prohibited local governing bodies from adopting any ordinance regulating the bottling of alcoholic beverages was held to preempt a local ordinance requiring a minimum cash refund value on every nonrefillable container in which beverages were offered for sale. 221 Va. at 207, 269 S.E.2d at 362-63. And in *Fairfax County* v. *M.&S., Inc.,* 222 Va. 230, 279 S.E.2d 158 (1981), a local building code ordinance was held preempted by a state building code regulation promulgated pursuant to enabling legislation which provided that the state code "shall supersede the building codes and regulations of the counties, municipalities and State agencies." 222 Va. at 235 n. 2, 279 S.E.2d at 161 n. 2.