TICONDEROGA FARMS, INC.

V.

COUNTY OF LOUDOUN, ET AL.

Record No. 901390

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, Lacy, and Hassell, JJ.

* Justice Russell prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on July 1, 1991.

*Russell J. Gaspar (Hanna, Gaspar & Osborne*, on briefs), for appellant.
*John R. Roberts, County Attorney (Joan E. Jennings, Assistant County Attorney*, on brief), for appellees.
*Amicus Curiae:* Commonwealth of Virginia (Mary Sue Terry, Attorney General; Deborah Love Field, Assistant Attorney General, on brief), for appellees.

JUSTICE RUSSELL delivered the opinion of the Court.

This is a dispute between a county, which asserts the power to regulate the disposal of solid waste, and a landowner, which contends that its activities are exempt from regulation because they constitute recycling. We conclude that the activities in question are subject to regulation by the county.

The essential facts were stipulated in the trial court. Ticonderoga Farms, Inc. (TFI) operates a 1200-acre farm in Loudoun County upon which it raises Christmas trees, nursery stock, and pulpwood. The topsoils are thin and contain little organic matter. The subsoil is heavy clay and the land is flat, resulting in poor drainage.

For many years, TFI has engaged in a comprehensive program to improve the land for agriculture. Tree prunings, leaves, brush, stumps, and other organic materials have been systematically collected as they were cleared from TFI's own lands, and piled in long windrows in order to permit them to decompose. The resulting compost is to be spread over and incorporated into the poorer soils on the farm.

In the spring of 1989, TFI accelerated this program by receiving, for a fee, the same kinds of woody waste materials from builders, developers, and others clearing lands elsewhere, and adding those materials to the windrows. In addition, TFI brought in "clean fill" dirt in order to alter the grade of the land in some fields to improve the drainage.

The windrows of organic material average twelve feet in height. They are periodically turned over and are watered and covered with vines to facilitate decomposition. The materials are never buried or burned, and it is undisputed that they will eventually be converted into agriculturally valuable compost, although it is a matter of conjecture how long it will take the stumps to decompose. All the compost is to be used on-site, and TFI has not sold

or distributed any of it to others. State officials have inspected the composting operations and have found no evidence of any harmful effluent or pollutant. The Loudoun County Fire Marshal has found no fire hazard arising from the composting operations.

In 1978, Loudoun County (the County) adopted an ordinance regulating the collection, storage, and disposal of solid waste, designated Chapter 1080 of the Codified Ordinances of Loudoun County (the ordinance). The ordinance required all persons operating facilities for the disposal of solid waste to obtain a permit from the County's Director of Technical Services as well as a State solid waste disposal permit. The ordinance imposed substantial fees, bond requirements, operational regulations, and construction standards upon the operators of such facilities.

In November 1989, the Loudoun County Department of Engineering cited TFI for operating a solid waste disposal facility without a permit, in violation of the ordinance, and demanded that TFI cease accepting solid waste from off-site sources. TFI refused the demand and promptly instituted this suit in the trial court against the County and its Director of Engineering. TFI's bill of complaint prayed for a declaratory judgment and injunctive relief against the enforcement of the ordinance. The County filed an answer and a cross-bill for injunctive relief.

The parties submitted the case to the court on cross-motions for summary judgment and a stipulation of facts. By written opinion, the chancellor ruled that the ordinance was valid, that it applied to TFI's composting operations, and that TFI was not exempt from its provisions. The court entered a final decree on August 24, 1990, enjoining TFI from the continued receipt of organic waste from off-site sources until it obtained all applicable permits pursuant to the ordinance. We granted TFI an appeal.[1]

TFI challenges the County's authority to adopt the ordinance and argues that the court erred in finding that its activities constitute the disposal of solid waste rather than recycling, which is exempt from solid waste regulation. TFI also contends that the court erred in awarding injunctive relief because of the County's failure to prove irreparable harm.

TFI cites the Dillon Rule as we expressed it in *Tabler* v. *Fairfax County*, 221 Va. 200, 202, 269 S.E.2d 358, 359 (1980):

---

[1] The final decree also decided two related cases that had been consolidated with the present suit. The issues in those cases are not before us in this appeal.

"local governing bodies have only those powers that are expressly granted, those that are necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable." TFI contends that no enabling statute expressly authorizes the County to adopt an ordinance such as Chapter 1080, and that no such authority may be implied because the General Assembly, by the adoption of the Virginia Waste Management Act, Code § 10.1-1400, *et seq.*, has vested statewide supervision of waste management in the Virginia Waste Management Board.

The chancellor ruled that TFI's argument was contrary to our holding in *Resource Conservation Mgmt. v. Bd. of Sup.*, 238 Va. 15, 380 S.E.2d 879 (1989). There, we considered a Prince William County ordinance which prohibited the operation of all privately-owned debris landfills. That ordinance was challenged upon the same grounds as those relied upon here by TFI. Although it was not phrased as a zoning ordinance, we held that Code § 15.1-486, authorizing counties to prohibit specific uses of land, was an express grant of power which included the authority to prohibit the operation of debris landfills. Therefore, the Prince William ordinance met the requirements of the Dillon Rule. *Id.* at 20, 380 S.E.2d at 882.

We also held in *Resource Conservation* that the adoption of the Virginia Waste Management Act did not preempt the field of waste management regulation so as to exclude local involvement in that field. There, we said, "the Act displays legislative intent to permit active local involvement in the field of waste management regulation." *Id.* at 22, 380 S.E.2d at 883.

TFI concedes, as it must, that our holding in *Resource Conservation* would warrant Loudoun County in enacting a total *prohibition* of solid waste disposal activities, but argues that the *regulation* of such activities, which may involve highly technical fine tuning to minimize environmental effects, lies outside the County's authority and resides exclusively with the Virginia Waste Management Board. We do not agree. The power to prohibit includes the power to regulate. Indeed, we have gone so far as to say, "where the power exists to prohibit the doing of an act altogether, there necessarily follows the power to permit the doing of the act upon any condition, or subject to any regulation, . . . as the greater power includes the less." *Taylor* v. *Smith*, 140 Va. 217, 232, 124 S.E. 259, 263 (1924). Conditions imposed upon the exercise of an act which a governmental body has the power to

prohibit may not, of course, be arbitrary, capricious, or impair constitutional rights, *Thompson* v. *Smith*, 155 Va. 367, 377-78, 154 S.E. 579, 583 (1930), but there is no contention here that Chapter 1080 suffers from those defects.

■ When the State, in the exercise of its police power, enacts certain regulations, a political subdivision may, if it acts within its delegated powers, legislate on the same subject unless the General Assembly has expressly preempted the field. *King* v. *County of Arlington*, 195 Va. 1084, 1088, 81 S.E.2d 587, 590 (1954). In so doing, the locality may impose additional requirements not contained in the state law. These will be upheld if they are within the locality's delegated powers and are not in conflict with the state law. *Id.* at 1090-91, 81 S.E.2d at 590-91. TFI makes no contention that the County's regulatory requirements are in conflict with regulations imposed by the state law. For these reasons, we uphold the chancellor's conclusion that the County had the authority to enact the ordinance.

The chancellor found as a fact that the reception of woody waste from off-site sources constituted the disposal of "solid waste" as defined in Code § 10.1-1400. TFI contends that this finding was not supported by the evidence. Rather, TFI argues, its activities actually amount to recycling, which is exempt from the regulations pertaining to the disposal of solid waste. Code §§ 10.1-1408.1(J); 10.1-1414; 15.1-28.01; 15.1-28.03.

■ TFI's argument is premised upon the theory that the statutory definition of "solid waste," which includes the term "discarded material," does not apply to TFI's operations because TFI's intention is not to abandon or discard the material, but to convert it into compost for agricultural use. That argument applies the statutory definition from TFI's perspective as the recipient of the material. We think the General Assembly intended that the definition be applied from a different perspective. The materials are brought to TFI by developers, builders, and others who have so strong an incentive to discard them that they are willing to pay TFI a fee to receive them. From that perspective, it is difficult to conceive a clearer example of "discarded material." We hold that the chancellor's finding was fully supported by the evidence.

■ Code § 10.1-1408.1(J) (formerly § 10.1-1408.1(H)) provides:

No permit shall be required pursuant to this section for recycling or for temporary storage incidental to recycling. As used in this subsection "recycling" means any process whereby material which would otherwise be solid waste is used or reused, or prepared for use or reuse, as an ingredient in an industrial process to make a product, or as an effective substitute for a commercial product.

In our view, the foregoing provision is inapplicable to TFI's composting activities. There is no immediate use for the waste. No one can state with assurance how long it will take the stumps to decompose into useful compost. In the meantime, they will lie on the surface of the land as solid waste discarded by developers. At some future time, the stumps and other waste may become an "effective substitute for a commercial product," but that expectation is too remote to exempt the composting activities from solid waste regulation in the meantime. They will never, according to TFI's representations, constitute an "ingredient in an industrial process to make a product." We agree with the chancellor's conclusion that TFI's activities are not exempt from regulation as "recycling."

Finally, TFI contends that the chancellor erred in granting the County injunctive relief in the absence of proof of irreparable harm. TFI points out that the record is devoid of any showing that its composting activities threaten any irreparable injury to the County or to the public.

Although proof of irreparable harm and proof of the lack of an adequate remedy at law are prerequisites to a grant of injunctive relief under a court's traditional equity jurisdiction, neither showing is required when a statute or ordinance expressly empowers a court to grant injunctive relief against its violation. In that case, "[a]ll that is required is proof that the statute or regulation has been violated." *Va. B. SPCA* v. *S. Hampton Rds.*, 229 Va. 349, 354, 329 S.E.2d 10, 13 (1985); *Carbaugh* v. *Solem*, 225 Va. 310, 315, 302 S.E.2d 33, 35 (1983). Here, § 1080.24 of the ordinance expressly provides that the County's Director of Technical Services (now the Director of Engineering) may seek injunctive relief in the circuit court to prevent or abate violations of the ordinance. For that reason, proof of irreparable injury was unnecessary and the chancellor did not abuse his discretion in granting injunctive relief.

Accordingly, those portions of the final decree which are the subject of this appeal will be

*Affirmed.*