PRESENT: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Koontz, JJ., and Whiting, Senior Justice

THE CITY COUNCIL OF ALEXANDRIA

                                          OPINION BY
v.  Record No. 982573        SENIOR JUSTICE HENRY H. WHITING
                                    September 17, 1999
THE LINDSEY TRUSTS

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge

     In this appeal, we decide whether a city charter authorizes the city to adopt a zoning ordinance that modifies the "grandfathered" rights of property owners.

     Carol A. Lindsey and Riggs Bank, co-trustees of The Lindsey Trusts and owners of property located at 101-103 King Street in Alexandria (collectively, the Property Owners), brought this declaratory judgment action against the City of Alexandria, its city council, mayor, and council members (collectively, the City).  The Property Owners sought to have the court declare part of an amendment to the Alexandria zoning ordinance null and void because the City's charter did not authorize its enactment.

     Upon considering the parties' stipulated facts, and oral and written argument, the court agreed with the Property Owners and entered a declaratory judgment declaring the contested part of the zoning amendment void and unenforceable.  The City appeals.

In 1976, the Old Town Food Service Corporation began operating the Fish Market Restaurant at 105 King Street as a use that was allowed by right under the existing zoning ordinance. In May 1979, the City amended its zoning ordinance to require a special use permit for the operation of restaurants. However, restaurants such as the Fish Market Restaurant that were then operating without a special use permit were excepted from the amendment's requirement, and were therefore considered "grandfathered" uses.

Afterward, but some time before February 1983, the Fish Market Restaurant expanded its operations into the adjacent buildings located at 101 and 103 King Street. In February 1983, the zoning ordinance was again amended to provide that:

> For any use now requiring a special use permit, regardless of whether or not a special use permit has been granted previously, the enlargement, extension or <u>increase in the intensity</u> of that use shall require a separate special use permit.

Alexandria Code § 7-6-193 (emphasis added).

In 1994 and 1995, this portion of the ordinance was amended to provide:

> For any use that now requires a special use permit, whether or not a special use permit has been granted previously, any change in the nature of the use or any enlargement, extension or <u>increase in the intensity</u> of that use shall require a separate special use permit.

Alexandria Ordinances 3711 (1994) and 3800 (1995)(emphasis added).

In 1996, when the lessee ceased its operations and vacated the 101 and 103 King Street locations (the Premises), the Property Owners attempted to lease the Premises to another restaurant tenant. Modifications of the premises were necessary to operate a restaurant independent of the operation of the restaurant at 105 King Street.  Because the City regarded those modifications as an intensification of the use of the Premises, it advised the Property Owners that a special use permit would be required.

The Property Owners brought this declaratory judgment action to determine whether the city charter authorized the City to enact the intensification-of-use provision of the zoning ordinance.  The trial court agreed with the Property Owners that, since there was no such authorization, the contested portion of the zoning ordinance was void and unenforceable as a violation of Dillon's Rule.  Accordingly, the court entered a declaratory judgment to that effect and the City appeals.

The Property Owners contend that the court correctly applied Dillon's Rule, which we have described in the following language:

> The Dillon Rule of strict construction controls our determination of the powers of local governing bodies. This rule provides that municipal corporations have

only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable. Ticonderoga Farms v. County of Loudoun, 242 Va. 170, 173-74, 409 S.E.2d 446, 448 (1991); City of Richmond v. Confrere Club of Richmond, 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990). When a local ordinance exceeds the scope of this authority, the ordinance is invalid. See City of Richmond, 239 Va. at 80, 387 S.E.2d at 473; Tabler v. Board of Supervisors, 221 Va. 200, 204, 269 S.E.2d 358, 361 (1980).

City of Chesapeake v. Gardner Enterprises, Inc., 253 Va. 243, 246, 482 S.E.2d 812, 814 (1997).

We turn to the charter to ascertain whether the legislature has given the City the requisite authority. Section 9.09 of the charter gives the City the power to adopt a comprehensive zoning plan, which

shall provide for the regulation and restriction of the use of land, buildings and structures in the respective zones and may include but shall not be limited to the following:

. . . .

(g) It may . . . require that such [nonconforming] buildings or structures and the use thereof shall conform to the regulations and restrictions prescribed for the zone or zones in which they are situated whenever they are enlarged, extended, reconstructed or structurally altered; and may require that such buildings or structures and the use thereof shall conform to the regulations and restrictions prescribed for the zone or zones in which they are situated, in any event within a reasonable period of time to be specified in the ordinance.

Alexandria City Charter § 9.09 (emphasis added).

4

The parties agree that charter provisions such as § 9.09 "must be construed to be a qualified amendment of the general law, and controlling in the locality to which it applies." Pierce v. Dennis, 205 Va. 478, 484, 138 S.E.2d 6, 15 (1964).

Among other things, the City argues that since § 9.09 of the charter specifically authorizes the eventual termination of existing uses that do not conform to zoning amendments, it necessarily includes the power to regulate those uses. The Property Owners counter by claiming that the City had no express or implied charter power to regulate the intensification of "grandfathered" uses. They argue that the charter's enumeration of the powers to regulate the enlargement, extension, reconstruction, or structural alteration of such buildings or their uses necessarily excludes the power to regulate the intensification of their use.

In Ticonderoga Farms, Inc. v. County of Loudoun, 242 Va. 170, 174, 409 S.E.2d 446, 448 (1991), we held that a county's power to prohibit solid waste disposal activities necessarily included the power to regulate those activities. But, as we noted in Ticonderoga Farms, "[c]onditions imposed upon the exercise of an act which a governmental body has the power to prohibit may not, of course, be arbitrary, capricious, or impair constitutional rights." 242 Va. at 174-75, 409 S.E.2d at 448.

5

Here, had the City chosen to treat restaurants operating with no special use permit as nonconforming uses, it could have required the termination of their operation after a reasonable period of time under the powers given it by § 9.09(g) of its charter. However, the City chose not to exercise that power in 1979. Instead, its ordinance provided that existing restaurants "shall not be subject to this special use permit requirement, nor shall they be deemed nonconforming as result of this special use permit requirement." Later, it decided to exercise its power to regulate the uses of such restaurants by requiring special use permits should the restaurants be expanded or their use intensified. Because the City had the power to terminate such "grandfathered" uses, we conclude that it also had the power to regulate them and that it exercised that power by enacting and enforcing an ordinance requiring a special use permit should the use be intensified.

The Property Owners also contend that because their use was not a nonconforming use but a "grandfathered" one expressly exempted from the requirements of the earlier zoning ordinance, the City had no authority to affect those rights. We do not agree with the Property Owners.

The Property Owners' use became what the parties have described as a "grandfathered" use when the city council chose not to classify it as nonconforming by excepting such a use from

6

the requirements of the amended ordinance.  However, the Property Owners had no vested right in the continuation of their property's "grandfathered" status protecting them against the application of an amended zoning ordinance.  See <u>Board of Zoning Appeals of Bland County v. CaseLin Systems, Inc.</u>, 256 Va. 206, 210, 501 S.E.2d 397, 400 (1998)(noting that property owners have no vested property right in the continuation of their property's existing zoning status).

The ordinance in question seeks only to regulate future changes in the use of the restaurant and does not attempt to modify already existing uses.  Hence, we find no merit in this contention.[*]

Accordingly, we will reverse the declaratory judgment of the trial court and enter a final judgment that the City had the authority to enact the contested amendments to the zoning ordinance.

<u>Reversed and final judgment</u>.

---

[*] We have examined and find no merit in the remaining contentions of the Property Owners.