Present: All the Justices

NORFOLK REDEVELOPMENT AND
HOUSING AUTHORITY

v.  Record No. 051708     OPINION BY JUSTICE ELIZABETH B. LACY
                                         June 8, 2006
C AND C REAL ESTATE, INC.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

This appeal pertains to the dismissal of a housing authority's petition to acquire property by condemnation pursuant to the authority's conservation plan.

Code § 36-49.1 authorizes localities to prepare, adopt, and execute conservation plans to identify and rehabilitate "slum, blighted, deteriorated or deteriorating areas" within the locality.  Pursuant to this authority, the Norfolk City Council adopted a resolution in 1987 commissioning the Norfolk Redevelopment and Housing Authority (the Authority) to examine blighted and deteriorating land in the North Church Street area of Norfolk to determine whether conservation was possible.  The following year, after a public hearing, the City Council adopted the conservation plan (the Plan) recommended by the Authority.  See Code § 36-49.1(8).

The Plan allowed the Authority to acquire property included in the conservation area by exercising the power of eminent domain.  The Property Acquisition section of the Plan sets out the procedure for acquiring properties through

eminent domain and references a "Boundary and Land Acquisition Map" that identifies properties to be acquired.

The Plan stated that there were "two large junk yards in the area which add to the blighted condition of the district." The Boundary and Land Acquisition Map identified those two parcels as property "To Be Acquired" under the plan. C and C Real Estate, Inc. (C&C) owns one of the parcels identified in the Plan. C&C purchased this property (the Property) in 1997 and leased it to Downtown Used Auto Parts for use as an automobile salvage yard. Downtown Used Auto Parts originally leased the Property in 1992 from the former owner, who had also operated a salvage yard on the Property.

In 1990, the Authority sent a notice to correct the conditions considered as deficiencies to the owner of the second junkyard identified in the Plan; however, it sent no such notice to the owner of the Property now owned by C&C. The Authority did notify C&C of its intent to acquire the Property by letter dated December 1, 1999. During this time period, the Mid-Atlantic Coca-Cola Bottling Company (Coca-Cola) began discussions with the Authority about the possibility of an expansion of its operations in the Mid-Town area. Coca-Cola suggested that the City convert the Property into a parking lot that could be used by Coca-Cola's

employees.  No action was taken on Coca-Cola's suggestions at that time.

By letter dated August 16, 2000, the Authority offered to purchase the Property for $400,000.  C&C did not reply to the offer for over two years.  During the interim, the owner of a neighboring property successfully petitioned the City to close a part of Armistead Avenue in an area adjacent to the Property.  C&C acquired part of the closed street from the City during the first half of 2002 and, in November of that year, rejected the Authority's purchase offer and asked that the Authority "proceed to file the Petition in Condemnation." The following year, on July 22, 2003, the Authority sent another letter offering to buy the Property for $560,000.  C&C again refused the offer.  On October 27, 2003, the Authority passed a resolution authorizing the condemnation of the Property.  The petition for condemnation was filed in the Circuit Court of the City of Norfolk on November 25, 2003.

Following an ore tenus hearing, the circuit court issued a letter opinion concluding that the Authority's condemnation petition should be dismissed because:  (1) that part of the Plan purporting to authorize condemnation of property solely on a finding of blight or a blighting influence was invalid; (2) C&C did not receive a one-year notice to correct deficiencies to which it was entitled under the Plan; and (3)

the Authority's 15-year delay in filing the condemnation proceeding raised due process concerns.  The circuit court also held that Code § 36-49.2 does not prevent the Authority from using its condemnation power to acquire property designated as blighted pursuant to a conservation plan even if the property will be used for industrial purposes after rehabilitation.  Following further briefing and argument of counsel, the circuit court entered a final order on May 12, 2005, incorporating its letter opinion and dismissing the Authority's condemnation petition.  The Authority timely filed this appeal.

On appeal, the Authority raises eight assignments of error.  Four of these challenge the findings made by the circuit court in conjunction with its conclusion that the Authority's condemnation action violated C&C's due process rights.  Three assignments of error relate to the circuit court's interpretation and application of the Plan.  Finally, the Authority challenges the admission of certain expert testimony.  Additionally, C&C assigns cross-error to the circuit court's holding that Code § 36-49.2 did not prohibit the Authority from using its eminent domain powers for acquiring property that will be used for industrial purposes. We will consider these issues in order.

THE AUTHORITY'S APPEAL

4

### 1. Due Process

The circuit court's conclusion that the Authority's attempt to take C&C's Property violated due process was based on the 15-year delay from the time the Authority made its finding of blight until it attempted to correct the blighted condition of the Property by filing the condemnation petition.[1] This delay, according to the circuit court, "argues strongly against" a finding that the elimination of blight was the "real reason" the Authority sought to acquire the Property. The circuit court further found that this delay gave rise to a "reasonable expectation" that the Authority would not take the Property and that the delay allowed C&C to expand its business while the Authority was insulated from paying for the "value of the ongoing business" in a condemnation proceeding. The Authority challenges each ground relied upon by the circuit court, arguing that the condemnation did not offend principles of due process because the passage of 15 years did not alter the reason for the taking, did not violate any limitations period, and would not result in unfair compensation for the Property to be taken. For the following reasons we agree with the Authority.

---

[1] Although the condemnation proceeding was not filed until 2003, C&C was aware of the Authority's interest in acquiring the Property based on letters exchanged beginning in 1999, some of which contained offers to purchase the Property.

The due process clauses of the Constitutions of the United States and of the Commonwealth of Virginia prohibit the government from taking private property unless such property is taken for public use and the property owner receives just compensation for the property taken. U.S. Const. amend. V; Va. Const. art. 1, § 11; Kelo v. City of New London, ___ U.S. ___, ___ n.1, 125 S.Ct. 2655, 2658 n.1 (2005); State Highway & Transp. Com. v. Linsly, 223 Va. 437, 443, 290 S.E.2d 834, 838 (1982).

Taking private property to stem blighting and deteriorating conditions is a public purpose. Mumpower v. Housing Authority, 176 Va. 426, 437, 11 S.E.2d 732, 735 (1940). A locality's determination pursuant to a conservation plan that property is blighted and subject to acquisition is a legislative act which, on review, is entitled to a strong presumption of validity. Runnels v. Staunton Redevelopment & Housing Authority, 207 Va. 407, 410, 149 S.E.2d 882, 884 (1966). The locality's determination may be set aside by a circuit court only on a showing that the locality acted arbitrarily. The burden is on the challenger to establish that the decision was invalid by clear and convincing proof. Id. In this case, C&C failed to carry that burden of proof.

As the circuit court noted, in 1988 the Authority determined that the Property was a blight and exerted a

6

blighting influence on the area.[2] The owner of the Property at

the time did not challenge that decision. The question before

us then is whether a challenge to that determination arising

many years later but before property has been acquired is

resolved by examining the condition of the property at the

time of the initial designation or at the time of acquisition.

This is an issue of first impression for this Court. We

conclude that while the original determination retains the

strong presumption of validity attached to such legislative

acts, the current status of the property must be considered

when determining whether the original purpose of the

acquisition remains viable at the time the condemnation

occurs. This standard is dictated by the statutes governing

conservation plans which allow the use of eminent domain only

_____

[2] The Authority made the following finding:

> There are significant environmental
> problems which are contributing to the
> deterioration of the project area. Trash,
> litter, and debris are found throughout
> the area. Vacant lots are covered with
> weeds and, in several cases, the partial
> foundations of demolished buildings.
> There are two large junk yards in the area
> which add to the blighted condition of the
> district. Derelict, abandoned motor
> vehicles were identified throughout the
> proposed project area prior to a concerted
> effort to rid the area of this problem.
> Although a number of vehicles have been
> removed, the underlying conditions have
> not changed and others will probably take
> their place.

for the specific public purposes of eliminating deteriorating properties or arresting the blighting influence.  If a property no longer meets that criteria, acquisition by condemnation pursuant to a conservation plan would no longer be authorized.  See Code §§ 36-49.1, -50.1.  Therefore, in this case, to rebut the presumption of validity, C&C bore the burden to show by clear and convincing evidence that the Property no longer was a blight or no longer exerted a blighting influence on the surrounding area.

The evidence relied upon by the circuit court to show a change in acquisition purpose included the Authority's discussions with Coca-Cola and improvements to the Property, including adding water and sewer service, cleaning up trash, painting and otherwise fixing one building while demolishing another, and erecting a fence limiting the visibility of the interior.  The evidence of discussions between Coca-Cola and the Authority regarding use of the Property as a parking lot does not address the condition of the Property and therefore is not relevant rebuttal of the presumption that the finding of blight remains valid.  Furthermore, the purpose of a conservation plan is to identify and acquire blighted property so that the property may be rehabilitated.  Because properly designated and acquired

8

"blighted" property may eventually be made available to and used by private enterprise, Code § 36-49.1, such ultimate use does not alter the original acquisition purpose of eliminating blight.

Although the evidence showed that improvements were made to the condition of the Property, there is also evidence that the Property remains a blight or has a blighting effect on surrounding property.  The Authority introduced pictures of the Property from 1988 through the time of trial along with the testimony of Karen Wilds, who qualified as an expert for the Authority in the field of land planning.  Wilds testified that based on her observation of the current state of the Property and the pictures of it, the Property remained infeasible of rehabilitation and its condition was not consistent with the objectives of the Plan.

This record does not contain clear and convincing evidence sufficient to rebut the presumption that the Authority's designation of the Property as blighted or exerting a blighting influence remained valid.  Accordingly, the Authority did not acquire the Property for a non-public purpose in violation of the federal and state due process clauses.

In addition to limiting the government from taking private property unless the taking is for a public use and the

9

landowner is justly compensated, constitutional procedural due process mandates that the government provide a landowner "notice and a reasonable opportunity to be heard" before affecting that individual's property rights pursuant to a binding court decree. Doe v. Brown, 203 Va. 508, 512, 125 S.E.2d 159, 163 (1962). However, our case law establishes that the legislature may prescribe the manner in which that notice will be provided, so long as its provisions afford the individual a reasonable opportunity to be heard. Id.; Williamson v. Hopewell Redevelopment & Housing Authority, 203 Va. 653, 655, 125 S.E.2d 849, 850-51 (1962).

In this case, the circuit court did not find, and C&C does not assert, that the Authority failed to afford C&C proper procedural due process under the notice provisions of the eminent domain statutes. Code §§ 25.1-205 through –222; see also Williamson, 203 Va. at 656, 125 S.E.2d at 851 (finding eminent domain hearing notice provisions under former Code § 25-13 constitutional). To the extent the circuit court and C&C maintain the Authority violated C&C's procedural due process rights, they rely upon the 15-year delay between the Authority's adoption of the Plan and filing the condemnation proceeding. This delay, according to the circuit court, gave C&C a "reasonable expectation that their property would not be condemned . . . especially since the City of Norfolk conveyed

10

additional property to [C&C] in 2002 when part of Armistead Avenue was closed" and allowed C&C to improve its business, although the Authority would not be liable for "the value of the ongoing business." We find, however, that these factors do not implicate any procedural due process considerations in the context of this case.

First, there is no limitations period defined by statute for acquiring property under a conservation plan. Contra Code § 36-51(c)(five year limitation on acquiring property pursuant to redevelopment plan commencing on date of plan approval). Code § 36-51.1(7). Code § 36-51.1 allows an authority to place such a limitation on conservation project activities, but the Authority did not do so in this case. The Plan states that "[i]t is the intent of the Authority to proceed diligently to achieve completion of project activities" and that "[t]he Project Area Committee has requested that the project activities be completed by the end of 1997 and this has been selected as the target date;" however, the Plan does not preclude further acquisitions of properties within the project area beyond 1997.

The absence of a limitations period for conservation plans is reasonable because conservation projects are by nature long-term undertakings. Nevertheless, when a delay in pursuing condemnation proceedings becomes unreasonable, the

11

Authority is subject to Code § 36-27, which allows a court to instruct the commissioners in such proceedings to allow damages incurred by the landowner because of the delay.

Finally, neither the circuit court nor C&C have provided any legal support for the proposition that a viable due process claim in this case can be based on a "reasonable expectation" that the Property will not be taken, regardless of whether such expectation stems from the passage of time or the acquisition of additional property prior to condemnation. In the same vein, there is no basis for a constitutional procedural due process challenge simply because the Authority "is not required to pay for the value of the ongoing business" in a condemnation proceeding. The measure of just compensation for a governmental taking of property is the "fair market value of the land as it stands today, in view of all the purposes to which it is reasonably and naturally adapted." Fonticello Mineral Springs Co. v. City of Richmond, 147 Va. 355, 361, 137 S.E. 458, 460 (1927). Paying for the value of an ongoing business enterprise is not constitutionally required. See id.

Accordingly, for these reasons, we conclude that the circuit court erred in holding that the Authority's condemnation proceeding violated principles of due process.

2. Interpretation and Application of the Plan

12

The Authority next challenges the circuit court's determination that Paragraph 1 of the Acquisition section of the Plan exceeded the authorization contained in Code § 36-50.1(4), and that under the Plan, C&C was entitled to a notice allowing it the opportunity to cure the blighted conditions consistent with Code § 36-50.1(2).  The pertinent language in the Acquisition section of the Plan states:

> The Boundary and Land Acquisition Map, Exhibit One, identifies properties to be acquired because they appear infeasible of rehabilitation or their land use is inconsistent with the purposes and objectives of the Conservation Plan.
>
> Properties within the Project Area will be inspected to determine whether or not they comply with the provisions of the Conservation Plan Rehabilitation Standards . . . .  The owners of property which does not comply with the Standards will be notified in writing of observed deficiencies [and if] the property has not been made to comply with the Standards within one year after receiving a written request for such compliance, then the Authority may proceed to acquire the property by deed or condemnation.

The relevant portions of Code § 36-50.1 are subsections (2) and (4) which provide that in connection with a conservation plan, an authority cannot exercise powers of eminent domain except to acquire

> (2)  properties which are determined by the authority to be in violation of the standards for design, construction, maintenance and use of property set out in the conservation plan . . . and which have not been made to comply with such standards within one year after a

13

written request to rehabilitate to project standards is given to the owner by the authority; or

. . .

(4) properties which are infeasible of rehabilitation or . . . exert a blighting influence on adjacent properties or prevent proper development of land so as to inhibit or prevent accomplishment of the purposes of the conservation plan.

The Authority argues that Paragraph 1 of the Acquisition section complies with Subsection (4) of Code § 36-50.1 and allows the Authority to acquire properties under that paragraph without providing any notice to the landowner. A comparison of the language in the Plan and in the statute, however, demonstrates a difference in the conditions under which property may be acquired. Subsection (4) of Code § 36-50.1 allows acquisition without such notice if the properties "are infeasible of rehabilitation . . . so as to inhibit or prevent accomplishment of the purposes" of the plan. (Emphasis added.) Paragraph 1 of the Acquisition section, however, refers to properties that "appear infeasible of rehabilitation or their land use is inconsistent with the purposes and objectives of the Conservation Plan." (Emphasis added.)

The Authority argues that despite this deviation in language, the phrases used are synonymous; thus, it contends that this portion of the Plan is not overbroad. The Authority

14

also argues that a reviewing court should not strictly construe the terms of a conservation plan because as defined by Code § 36-51.1, the conservation plan is merely "an outline for the conservation, development or redevelopment of an area," and need only be "sufficiently complete to indicate" the conservation activities that will take place within the project area.  We disagree.

The Plan's phrase "appear infeasible" is more encompassing than the Section's "are infeasible," as the former would allow a taking of property that can "be taken as," "look[s]," or "seem[s]" infeasible of rehabilitation, Webster's Third New International Dictionary 103 (1993), while the latter mandates that, to be taken, the property must be infeasible of rehabilitation.  Also, the definition of "inconsistent" is "lacking consistency" or "incompatible," while the meaning of "inhibit" is to "prohibit from doing something."  Id. at 1144, 1163.  A land use that lacks consistency with the goals of a plan does not necessarily prohibit an authority from achieving those goals.  Thus, we reject the Authority's argument that the language in Paragraph 1 of the Plan is synonymous with and no broader than that language in Code § 36-50.1(4).

We also reject the Authority's argument that the Plan was only an outline and any discrepancies were immaterial because

15

the statute would ultimately control.  Although the statutes authorize the creation and implementation of a conservation plan, an authority's ability to undertake actions allowed by statute arises by virtue of a duly adopted conservation plan. The plan must be consistent with the grant of authority set out in the statutes and, if the plan contains authorization for acts beyond those delegated, such authorization is invalid.  City Council of Alexandria v. Lindsey Trusts, 258 Va. 424, 427, 520 S.E.2d 181, 182-83 (1999) (citing City of Chesapeake v. Gardner Enterprises, Inc., 253 Va. 243, 246, 482 S.E.2d 812, 814 (1997)).  Furthermore, distinguishing properties to be acquired under Paragraph 1 or Paragraph 2 on the Boundary and Land Acquisition Map does not cure the infirmities in Paragraph 1 of the Plan.  Thus, we hold that the circuit court did not err in determining that the language of Paragraph 1 is broader than that found in Code § 36-50.1(4) and, therefore, cannot be utilized as a basis for the exercise of eminent domain as authorized by that Code section.

We also conclude that the circuit court correctly determined that, as written, the Acquisition section complies with subsection (2) of Code § 36-50.1, which allows an authority to identify properties not in compliance with its standards and acquire them by eminent domain if a landowner does not, within one year of written notice, remedy the

16

violations identified.  The language of Paragraph 2 in the Plan's Acquisition section is entirely consistent with Code § 36-50.1(2).  The evidence is undisputed that C&C did not receive the required notice to correct the deficiencies on the Property from the Authority.  Accordingly, the circuit court did not err in holding that because the Authority failed to provide such notice and because condemnation was not available without notice pursuant to Paragraph 1 of the Plan, the Authority could not maintain its condemnation petition against C&C's Property in this case.

### 3.  Expert Testimony

Finally, the Authority assigns error to the admission of certain testimony of Timothy E. Barrow who qualified as an expert in land planning.  Much of Barrow's testimony involved his interpretation and the Authority's application of the Plan as they related to the Authority's determination of blight or blighting influence and the operation of the Plan regarding the need to provide a property owner with notice and an opportunity to cure deficiencies.  Because the issues in this appeal can be and have been resolved without reference to Barrow's testimony, we need not consider whether Barrow's testimony was properly admitted.

### C&C'S ASSIGNMENT OF CROSS-ERROR

17

We now turn to C&C's assignment of cross-error. C&C asserts that Code § 36-49.2 bars the Authority from using its power of eminent domain to acquire and redevelop properties in the conservation project area for industrial use.  The circuit court held that Code § 36-49.2 "merely expands the means by which property may be acquired by the housing authority." Because the circuit court's interpretation of the statute is correct, we will affirm the circuit court's judgment.

Code § 36-49.2 provides:

> In addition to the other powers to acquire real property by purchase or lease, an authority is specifically empowered to purchase or lease real property for immediate or future use, without the exercise of the power of eminent domain, for improvement and development for sale, lease, or sublease as industrial sites, scientific research laboratory sites, educational institution sites or sites for housing persons displaced from other lands of the authority.

The language of this statute does not specifically prohibit the use of condemnation proceedings for acquisition of land which will be used as an industrial site.  The phrase upon which C&C relies, "without the exercise of the power of eminent domain," taken in context is consistent with a grant of power to acquire property by lease or purchase for certain uses, while restricting the use of eminent domain to those circumstances in which a property satisfies one of the criteria set out in Code § 36-50.1.

18

Adopting C&C's interpretation would create a conflict with other statutory provisions that authorize an authority to make land acquired pursuant to a conservation plan available for use by private entities.  See Code §§ 36-49.1, -51.1. Such property may be acquired by purchase, lease, or eminent domain, but if by eminent domain, compliance with Code § 36-50.1 is required.  As the circuit court concluded, the power conferred by Code § 36-49.2 expands the means by which property may be acquired and the purposes for which such property may be used by the Authority.  It does not prohibit the use of condemnation by an authority for acquisition of property that may subsequently be used for industrial sites or purposes.[3]  Accordingly, we reject C&C's assignment of cross-error.

CONCLUSION

In summary, although the circuit court erred in concluding that the condemnation proceeding violated principles of due process, the circuit court did not err in

---

[3] On appeal, C&C also challenges this Plan in its entirety on the ground that its purpose was "an industrial development plan that takes property for industrial reuse," and it was never designed to eradicate blight or address any other condition enumerated in Code § 36-50.1.  We reject this argument for two reasons.  First, C&C specifically waived this challenge to the Plan at trial, Rule 5:25, and second, the first stated objective of the Plan is "the arrest of deterioration and the removal of blight, obsolescence and incompatible land uses."

holding (1) that Code § 36-49.2 does not prohibit the use of eminent domain for the acquisition of property which may be used for industrial purposes pursuant to a conservation plan, (2) that because the language of Paragraph 1 of the Acquisition Section of the Plan was overbroad, it did not allow acquisition of property as authorized by Code § 36-50.1(4), and (3) that the Plan required the Authority to provide C&C notice and an opportunity to correct deficiencies. Because the Authority did not comply with the Plan by providing C&C with the required notice, there was no error in the dismissal of the condemnation proceeding.

Accordingly, for the reasons expressed in this opinion, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>